STATE OF NEBRASKA, APPELLEE, V.
JEFFREY A. HARKER, APPELLANT.
663 N.W. 2d 488

Filed September 7, 1999.    No. A-98-1353.

Thomas C. Riley, Douglas County Public Defender, and Peder C. Bartling for appellant.

Martin J. Conboy III, Omaha City Prosecutor, James Jansen, Douglas County Attorney, and Jennifer Cavel, Special Assistant Omaha City Prosecutor, for appellee.

HANNON, SIEVERS, and CARLSON, Judges.

HANNON, Judge.

The appellant, Jeffrey A. Harker, pled no contest to an assault and battery charge under a city ordinance. Harker had been in jail for 66 days prior to sentencing, possibly for separate felony charges. At sentencing, Harker requested credit for the time served. The trial judge indicated he was under the impression that credit for time served need not be given if the sentence is less than the maximum sentence. The judge then sentenced Harker to 179 days in jail with no credit. Immediately after the sentence was pronounced, Harker called the judge a "[c]ocksucker." In the short proceeding following, Harker used the same term eight times. The judge then summarily found Harker guilty of three separate acts of contempt and sentenced him to 180 days in jail for each of the three acts, with the sentences to run consecutively. Harker appealed both the judge's failure to give him credit for time served on the assault and battery charge, and the sentences for contempt. The district court affirmed. We conclude the trial court erred in not determining whether Harker was entitled to credit for time served, in finding and sentencing him for contempt without making findings stating the facts constituting each contempt, and in imposing an aggregate sentence of more than 6 months' imprisonment in the same proceeding without giving him a jury trial. We therefore reverse, and remand for further proceedings.

## BACKGROUND

Harker was charged with assault and battery against his wife, Tammy Harker, as well as disorderly conduct in connection with the same occurrence. On March 24, 1998, Harker appeared before the county court with counsel, and pursuant to a plea bargain for the dismissal of the disorderly conduct charge, he pled no contest to the assault and battery charge. Harker was advised of his rights, and that the maximum penalty was 6 months in jail and a $500 fine. A factual basis was established in a proper manner. The record establishes that Harker was guilty of serious physical abuse of Tammy and that there was a history of such abuse. When the judge asked the prosecutor if Tammy had any recommendations on sentencing, the prosecutor stated Harker's criminal record, that he had abused Tammy in the past, that she

was standing up to him for the first time, and that Tammy wished to address the court. Defense counsel then pointed out that Harker had been in custody for 66 days and asked that he be given credit for time served. Tammy was allowed to speak and stated that Harker should not get credit for time served because "it took a lot for me to step forward and say that I've been abused over the years." She also stated Harker was in jail for a completely different charge. Defense counsel then clarified that Harker was being held on the current charges and the felony charges. Tammy then stated, "And what about the victim's rights?" The judge replied:

> I agree, ma'am. You have some legitimate complaints. Unfortunately, the only way that I can make sure that your rights are covered is to give him the maximum penalty, and if I do that, I have to give him credit for the time he sat in jail on those charges. There is one way not to do that."

Defense counsel then cited Neb. Rev. Stat. § 47-503 (Reissue 1998) and again argued Harker was entitled to credit. The judge stated: "I order the defendant serve a term of 179 days, set his appeal bond at $10,000. You can appeal the decision as to whether or not I should have given him credit." Harker then stated, "You did a good job. Cocksucker." The judge asked, "Excuse me, sir?" and Harker replied with the expletive a second time. The judge directed a deputy to bring Harker back and then announced that he was holding Harker in contempt of court. Harker replied, "So what." Defense counsel informed Harker that the judge was giving him more time, and Harker replied, "So what. I'm facing four fucking warrants right now." The court then asked Harker if he had anything to say about the sentence being imposed on the contempt of court charge. Defense counsel attempted to explain Harker's conduct as a result of the pressure that he was under. The prosecutor indicated concern for the record being complete, and the judge asked, "Mr. Harker, as you walked away after your sentence was pronounced, you indicated that you called me [stating the expletive]. Do you dispute that?" Harker replied, "Not at all [using the expletive a third time]." The judge then stated that was another count of contempt, and Harker proceeded to call the judge the same name a fourth time. The judge then sentenced Harker to 180 days in jail

for each of the three counts and stated the sentences were to be served one after the other. Harker repeated the expletive four more times before the short record ended.

The journal of the sentence on the contempt charges is separate from the journal of the sentence for the assault and battery charge. The journal for the contempt charges is on a form identical to that of the assault and battery charge. The form indicates that Harker was charged with three separate counts of contempt. The form states that "def[endant] found in contempt of court" and that "[d]efendant is sentenced to the Corrections Center for a term of (1) 180 (2) 180 (3) 180" days, for a total of 18 months. The document contains no further details.

## ASSIGNMENTS OF ERROR

The notice of errors filed in the district court alleges that the trial court erred (1) by failing to give Harker credit for the time served awaiting trial, (2) in abusing its discretion by imposing excessive sentences for the three contempt charges, and (3) by abusing its discretion by basing three counts on one occurrence. In this court, Harker alleges the district court erred (1) in affirming the sentence which failed to give him credit under § 47-503 for time served prior to trial, (2) by not determining that the trial court abused its discretion in finding and sentencing him on multiple counts of contempt, (3) by not remanding the contempt sentences for a jury trial, and (4) by failing to remand with directions to give Harker an opportunity to present a defense to the contempt charges. In this opinion, we address the issues raised in a different order than they were assigned.

## STANDARD OF REVIEW

Whether Harker was entitled to credit for time served is a question of law. In reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Vann v. Norwest Bank Neb.*, 256 Neb. 623, 591 N.W.2d 574 (1999); *Goff-Hamel v. Obstetricians & Gyns., P.C.*, 256 Neb. 19, 588 N.W.2d 798 (1999).

A final judgment or order in a contempt proceeding is reviewed in the same manner as in a criminal case. *Dunning v. Tallman*, 244 Neb. 1, 504 N.W.2d 85 (1993); *State v. Hinze*, 232

Neb. 550, 441 N.W.2d 593 (1989); *State v. Thalken*, 2 Neb. App. 867, 516 N.W.2d 635 (1994). In determining whether evidence is sufficient to sustain a conviction for contempt, an appellate court does not resolve conflicts in evidence, pass on the credibility of witnesses, evaluate explanations, or reweigh evidence presented, which are within a fact finder's province for disposition. *Thalken, supra.* A conviction in a bench trial for contempt is sustained if the evidence, viewed and construed in the light most favorable to the State, is sufficient to support that conviction. *Id.*

A trial court's factual finding in a contempt proceeding will be upheld on appeal unless the finding is clearly erroneous. *Dunning, supra; Thalken, supra.* An appellate court, examining a final judgment or order in a contempt proceeding, reviews for errors appearing on the record. *Id.* A defendant's contempt must be established by proof beyond a reasonable doubt. *Id.*

## DISCUSSION

*Credit for Time Served.*

■ Harker requested that he receive credit for time served. Statements by the judge indicate that the judge was under the impression that he was required to give credit for time spent in jail as a result of the charge only if he sentenced Harker the maximum allowed. In fact, statements by the judge would indicate that he sentenced Harker to 179 days rather than 180 days only because he believed that if he sentenced Harker to 180 days, he would be required to give Harker credit for time served. In *State v. Thomas*, 236 Neb. 355, 461 N.W.2d 513 (1990), this notion was stated by the Supreme Court, but the case did not involve a situation where the sentence imposed, plus the time already served, exceeded the maximum penalty. This question was rendered academic by § 47-503, which states in significant part, "Credit against a jail term shall be given to any person sentenced to a city or county jail for time spent in jail as a result of the criminal charge for which the jail term is imposed." In *State v. Torres*, 256 Neb. 380, 590 N.W.2d 184 (1999), published after the proceeding in the county court in this case, the Supreme Court clearly held the statute means what it says. However, in *Torres*, the Supreme Court held that the appellate court could

not give the credit against the sentence and remanded the cause to the district court for resentencing. We are in the same position, and in addition, the record does not clearly show the facts necessary to determine if Harker is entitled to the credit. We remand the matter of the credit for time served to the district court with directions to remand the case to the county court to resentence on the assault and battery charge, to hold a sentencing hearing on the contempt charges, and to give Harker credit for such time as the evidence shows he spent in jail as a result of the assault and battery charge.

*Contempt Charges.*

In this court, Harker argues the trial court abused its discretion by sentencing Harker to 18 months in jail because removing Harker from the courtroom, one of the sanctioned methods for dealing with contemptuous defendants, would have been a more effective method, and by finding three acts of contempt when there was really only one. Harker also argues that before the court can sentence him to more than 6 months in jail, he is entitled to a jury trial. Since the last argument clearly raises questions of constitutionality under the U.S. Constitution, we shall consider that question first.

*Right to Trial by Another Judge or Jury.*

The U.S. Supreme Court has made several pronouncements applicable to the case at hand. In *Duncan v. Louisiana*, 391 U.S. 145, 88 S. Ct. 1444, 20 L. Ed. 2d 491 (1968), the Court concluded that the 14th Amendment guarantees a right to trial by jury in all criminal cases except petty crimes and offenses, which the Court later defined generally as an offense where the defendant could be sentenced to no more than 6 months in jail. See, *Baldwin v. New York*, 399 U.S. 66, 90 S. Ct. 1886, 26 L. Ed. 2d 437 (1970); *Frank v. United States*, 395 U.S. 147, 89 S. Ct. 1503, 23 L. Ed. 2d 162 (1969).

In *Bloom v. Illinois*, 391 U.S. 194, 88 S. Ct. 1477, 20 L. Ed. 2d 522 (1968), the defendant was charged with criminal contempt in a probate case and was sentenced to 2 years' imprisonment. The issue before the Court was whether the U.S. Constitution requires a jury trial before sentencing someone to

jail for 2 years. The *Bloom* Court held that there is no substantial difference between serious contempt and other serious crimes. The Court held that "when serious punishment for contempt is contemplated, rejecting a demand for jury trial cannot be squared with the Constitution or justified by considerations of efficiency or the desirability of vindicating the authority of the court." 391 U.S. at 208. "[W]hen the legislature has not expressed a judgment as to the seriousness of an offense by fixing a maximum penalty which may be imposed, we are to look to the penalty actually imposed as the best evidence of the seriousness of the offense." 391 U.S. at 211.

■ In the case of *Taylor v. Hayes*, 418 U.S. 488, 94 S. Ct. 2697, 41 L. Ed. 2d 897 (1974), a Kentucky court sentenced the defendant convicted of multiple counts of contempt to 6 months' or less imprisonment on each count, but the sentences were to run consecutively and thus amounted to a substantial period of jail time. While the appeal was pending in the Kentucky Court of Appeals, the trial court, under procedures allowed by the laws of that state, reduced the sentences to an aggregate of 6 months. Thus, the *Taylor* Court considered the appeal as though the sentences did not amount to more than 6 months. The *Taylor* Court held that "petty contempt like other petty criminal offenses may be tried without a jury and that contempt of court is a petty offense when the penalty actually imposed does not exceed six months or a longer penalty has not been expressly authorized by statute." 418 U.S. at 495. However, the *Taylor* Court also stated, "We remain firmly committed to the proposition that 'criminal contempt is not a crime of the sort that requires the right to jury trial regardless of the penalty involved.'" 418 U.S. at 496.

■ In *Codispoti v. Pennsylvania*, 418 U.S. 506, 94 S. Ct. 2687, 41 L. Ed. 2d 912 (1974), the trial judge had pronounced the defendant guilty of seven contemptuous acts during the trial. The defendant was sentenced to 6 months in prison for each of six acts and 3 months for the seventh, with all sentences to run consecutively. The *Codispoti* Court noted that there was no legislative penalty specified for contempt of court, and under the laws of Pennsylvania, the matter was left to the discretion of the trial court. The Court again recognized that it did not accept the

defendant's position that a contemnor is entitled to a jury trial simply because a strong possibility exists that he will face a substantial term of imprisonment upon conviction. However, the Court recognized that the right of a criminal defendant to a jury trial is granted to prevent oppression by the government. See *Duncan v. Louisiana*, 391 U.S. 145, 88 S. Ct. 1444, 20 L. Ed. 2d 491 (1968). The *Codispoti* Court held that in the case of the postconviction adjudication of various acts of contempt committed during trial, the Sixth Amendment requires a jury trial if the consecutive sentences imposed total more than 6 months' imprisonment, even though no sentence of more than 6 months was imposed for any one act.

In *Codispoti, supra*, the several acts of contempt were committed during a trial over several days, whereas, in this case, the acts of contempt were committed without any trial. All of the acts were committed in a matter of minutes. In both cases, the punishment could not have been imposed to assure the defendant did not further interfere with the judicial process because the process was over. More importantly, in both cases, the sentences were imposed simultaneously.

Harker did not request a jury trial. Of course, he was not advised of a right to one. Harker was sentenced so quickly that he would scarcely have been able to request one if he had known of the right. Since under *Codispoti, supra*, and *Taylor, supra*, he would not have a right to a trial by jury unless the sentence imposed was more than 6 months' imprisonment, he could not have had an opportunity to request a trial by jury unless the judge first advised him that the judge was considering sentencing him to more than 6 months. The sentence in excess of 6 months clearly requires a reversal of Harker's convictions for contempt of court and a remand for further proceedings.

*Order Finding Contempt and Sentencing Harker.*

The "Misd/Traffic Register of Actions and Order" in which the trial court memorialized its findings and sentence of Harker for contempt contains a fatal error. In *Gonzalez v. State*, 119 Neb. 13, 226 N.W. 801 (1929), the Nebraska Supreme Court stated that a judgment of contempt must state the facts constituting the contempt, and a judgment which merely states the

conclusion of the court will not sustain a sentence for imprisonment for contempt. *Gonzalez* is cited in *Tastee Inn, Inc. v. Beatrice Foods Co., Inc.*, 167 Neb. 264, 92 N.W.2d 664 (1958). In the latter case, the Supreme Court reviewed several cases involving direct contempt, recognized that no complaint or charge was filed in them, and then stated:

> "It is not sufficient to state in a general way the conclusions of fact on which the conviction is based. The facts themselves must be stated, from which the reviewing court can see that the ultimate fact of guilt is properly and justly found. The findings of the court fail to meet this requirement. The record contains a bill of exceptions setting forth the proceedings in which the plaintiff was adjudged guilty of contempt. This does not aid the findings or supply such facts as should be contained therein."

*Id.* at 267, 92 N.W.2d at 666. The conviction was reversed.

The requirements of a formal order stating the facts which justify the contempt finding make sense in the light of the fact that in direct contempt there is no information, complaint, or other document showing the charges against the defendant, or the court's findings. The above authority clearly holds the conclusion of guilt is not sufficient. In the case at hand, the defendant uttered an expletive eight times and another expletive one time. He was convicted of three acts of contempt. For double jeopardy purposes, if for no other, Harker was entitled to specific findings on which acts or combinations thereof resulted in each of the three convictions.

### Proceedings on Remand.

In *State v. Watson*, 182 Neb. 692, 700, 157 N.W.2d 156, 161 (1968), the defendant appealed a sentence of 6 months' imprisonment for direct criminal contempt for "a series of repetitive obscenities, in and out of the presence of the jury, assaulted the able trial judge's character, his mother, his religion, and his professional ability and behavior." The *Watson* court stated that the defendant's position that the trial judge should have disqualified himself was absurd and untenable, and it affirmed a sentence of 6 months apparently imposed after the proceedings. The opinion gives very little information on the procedure used by the trial

court, but on the basis of *Mayberry v. Pennsylvania*, 400 U.S. 455, 91 S. Ct. 499, 27 L. Ed. 2d 532 (1971), we conclude the procedure in *Watson, supra*, violates the 14th Amendment to the U.S. Constitution. In particular, the procedure of allowing the trial judge before whom the acts of contempt were committed to hear the contempt matter after the trial is no longer appropriate.

■ In *Mayberry, supra*, the trial judge did not punish the several acts of contempt instantaneously, and the Court held, "[B]y reason of the Due Process Clause of the Fourteenth Amendment a defendant in criminal contempt proceedings should be given a public trial before a judge other than the one reviled by the contemnor." 400 U.S. at 466. The retrial before a jury in the face of a demand for a jury trial resulted in the appeal of *Codispoti v. Pennsylvania*, 418 U.S. 506, 94 S. Ct. 2687, 41 L. Ed. 2d 912 (1974). Therefore, on the basis of *Mayberry, supra*, we conclude that upon remand, Harker must be charged with contempt and tried by some judge other than the one before whom he allegedly committed the contempt, and based on *Codispoti, supra*, if a sentence of more than 6 months' imprisonment is contemplated by the court, Harker must be given a right to trial by jury.

Since the contempt proceedings will be had again before a different judge, we need not consider the constitutionality of the sentences from the aspect of the judge's bias generated by Harker's personal attack. Harker argues this point in his brief. Statements in the U.S. Supreme Court cases give this notion considerable validity, although we found no case specifically holding that a sentence by a judge whose anger is caused by personal accusations is invalid.

■ In *Mayberry, supra*, the Court quoted Chief Justice Taft:
> " 'All we can say upon the whole matter is that where conditions do not make it impracticable, or where the delay may not injure public or private right, a judge called upon to act in a case of contempt by personal attack upon him, may, without flinching from his duty, properly ask that one of his fellow judges take his place.' "

400 U.S. at 464. The Court vacated the convictions and remanded the cause for trial in front of another judge.

In *Taylor v. Hayes,* 418 U.S. 488, 94 S. Ct. 2697, 41 L. Ed. 2d 897 (1974), the Court held that upon remand, the trial should be held before some judge other than the one before whom the alleged contempt occurred. The Court noted that a sentence of 4½ years reflected the extent to which the judge became personally involved. In *Codispoti, supra,* the Court recognized that

> where the necessity of circumstances warrants, a contemnor may be summarily tried for an act of contempt during trial and punished by a term of no more than six months. Nor does the judge exhaust his power to convict and punish summarily whenever the punishment imposed for separate contemptuous acts during trial exceeds six months.

418 U.S. at 514. The Court stated that criminal defendants have the right to a jury trial to prevent oppression by the government and that a more compelling argument can be made for a jury trial in contempt cases than in other cases because contempt charges often strike at the most vulnerable and human qualities of the judge.

One student of the subject of contempt of court has written that "a passing insult that does not hinder the operation of the trial is probably not a sufficiently important matter to merit elaborate attack through use of the contempt powers." Dan B. Dobbs, *Contempt of Court: A Survey,* 56 Cornell Law Review 183, 204 (1971). Many years ago, Judge Robert Moran, a widely respected Nebraska trial judge, now retired, sent the writer of this opinion a transcription of a proceeding where a defendant addressed Judge Moran in a manner quite similar to that in the case at hand. In that record, Judge Moran answered each of the three or four insults issued by the defendant by asking the defendant if he had anything further to say. Judge Moran doubtlessly displayed a "poker face" to that defendant and maintained his usual judicial bearing during the proceedings. He was proud of his judicial conduct on that occasion, and in the opinion of this writer, he had a right to be.

Harker argues that it was improper for the court to charge Harker with three acts of contempt, rather than one, because the acts of contempt were the use of the same word on eight occasions. In this case, whether Harker committed three acts of con-

tempt or one is really a needless inquiry. We say this because insofar as we can find, there is no limit to the punishment available to the court for punishment of contempt, except perhaps that of the jurisdiction of the court. Under Neb. Rev. Stat. § 24-517 (Reissue 1995), this limit would be to that of a misdemeanor, which would be not more than 1 year in jail. See Neb. Rev. Stat. § 28-106 (Cum. Supp. 1998). It seems clear that it would be an abuse of discretion to sentence someone to more than 1 year in jail for conduct similar to that of Harker's whether that conduct is treated as one contempt or eight.

## CONCLUSION

We therefore vacate the sentence on the assault charge and remand for resentencing including a hearing on the amount of credit, if any, to which Harker is entitled. We vacate the three sentences for contempt and remand the cause for further proceedings in the county court consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.