278 Neb. 818 (2009)
STATE OF NEBRASKA, APPELLANT AND CROSS-APPELLEE,
v.
MARIO D. ALFORD, APPELLEE AND CROSS-APPELLANT.
No. S-08-1040.
Supreme Court of Nebraska.
Filed November 6, 2009.
Tricia Freeman, Chief Deputy Sarpy County Attorney, for appellant.
Thomas P. Strigenz, Sarpy County Public Defender, for appellee.
WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.
McCORMACK, J.

I. NATURE OF CASE
Mario D. Alford was involved in a fight with fellow inmate Anthony Lukowski at the Sarpy County jail while awaiting trial for first degree murder. Alford was charged and convicted of assault by a confined person and with being a habitual criminal. In imposing Alford's sentence, the court gave Alford credit for the time served while simultaneously awaiting trial on both the first degree murder and the assault charges. Neb. Rev. Stat. § 28-932(2) (Reissue 2008) provides that a sentence for assault of a confined person "shall not include any credit for time spent in custody prior to sentencing unless the time in custody is solely related to the [assault charge]." Citing to this provision, as well as to Alford's criminal history, the State seeks reversal of this credit for time served as giving Alford an "excessively lenient" sentence under Neb. Rev. Stat. § 29-2320 (Reissue 2008). Alford also timely appeals.[1]

II. FACTS

1. EVIDENCE OF CONFINEMENT
In support of the charge of assault by a confined person, the prosecution offered certified copies of the trial docket for the first degree murder charge for which Alford was in custody at the time of the assault. The documents demonstrated that after an initial hearing on the complaint, Alford was held without bond. Several entries reference Alford's being in the custody of the "SCSO," which we understand to mean the Sarpy County sheriff's office. In particular, an entry dated December 13, 2007, states, "[Alford] is remanded into the custody of the SCSO pending further hearing." The judge's minutes continue through May 30, 2008, without a final disposition of the felony charge. In the exhibit for the jury, the State redacted all references to the nature of the charge.

2. TESTIMONY ABOUT ASSAULT
Deputies Lloyd Schoolfield and David Weaver testified as witnesses to the assault. On the morning of February 10, 2008, Schoolfield was supervising the serving of the breakfast trays and the inmates of the Sarpy County jail were eating breakfast in their day areas. Alford and Lukowski were inmates in the same unit. Schoolfield had already served Alford's unit and was serving another unit nearby when he heard a noise. Schoolfield proceeded to where Alford and Lukowski were housed, and, through a window, he observed Alford and Lukowski locked in a fighting embrace.
Waiting for assistance to break up the fight, Schoolfield testified that he watched Alford free a hand and start "throwing punches to the head of Lukowski." When Weaver arrived to assist, the two deputies entered the unit and Schoolfield supervised the lockdown of the inmates not participating in the fight. By this time, Alford and Lukowski had fallen to the floor. Alford was underneath Lukowski with his arms around Lukowski's neck, holding Lukowski in a headlock to his chest. Weaver observed that Lukowski's arms were free, but that he did not hit Alford.
Alford continued to hold Lukowski in this manner even after Weaver approached and ordered him to let Lukowski go. Weaver repeated the order while applying the "mandibular angle pressure point." The first time Weaver did this, Alford winced, but did not let Lukowski go. After the second time, Alford released Lukowski.
When Alford and Lukowski got up, Schoolfield and Weaver observed that Lukowski had a bloody nose. Schoolfield testified that he had observed Lukowski's face when they had delivered the breakfast trays and that he had not observed any injuries before the fight occurred. Alford, in contrast, did not appear to be injured after the fight, and Alford told Schoolfield that he was not injured. Lukowski was sent to the jail's nurse.
Only one of the inmates in Alford's unit agreed to describe for Schoolfield the events leading up to the fight. Schoolfield testified that the inmate was no longer in the Sarpy County jail. Defense counsel believed that the inmate's description of the fight was favorable to Alford's defense. But when defense counsel asked Schoolfield what the inmate had said, the court sustained the State's hearsay objection. Defense counsel made an offer of proof that Schoolfield would testify that Alford had accused Lukowski of cheating in a poker game the night before and that, in response, Lukowski attacked Alford and began hitting him.
At trial, Lukowski testified that he had begun the physical altercation with Alford. Lukowski testified that on the morning of February 10, 2008, Alford was "running his mouth," so Lukowski told Alford to "stand up and shut up or do something about it." Lukowski testified that Alford then came toward him and that he felt threatened, so he swung at Alford, but missed. Lukowski testified that Alford did not immediately respond and that Lukowski started choking Alford. Lukowski testified that when Schoolfield arrived, he and Alford were facing each other and that Lukowski had one arm around Alford's upper back and neck and the other arm around his waist. Alford had both his hands around Lukowski's back. After that, Alford "broke my hands loose from around his neck and hit me in the face a few times and threw me to the ground and put me in a headlock and [the fight] got broke up by Deputy Weaver."
On cross-examination, Lukowski elaborated that he had also "head-butt[ed]" Alford a couple of times in the course of the fight. Furthermore, Lukowski stated that while Alford had him in a headlock on the floor, Lukowski was "still trying to get at his throat . . . I was still trying to choke him out."
Lukowski testified that he received injuries, including a bloody nose and a black eye, as a result of being struck in the face by Alford. In a photograph taken of Lukowski after the fight, he appears to have a black eye and a bruised nose.
The court received, without objection, a statement made by Lukowski shortly after the incident. In that statement, Lukowski did not mention choking Alford at all. Lukowski's statement described that Alford "rushed" toward him. In response, Lukowski swung at Alford, but missed. Lukowski stated that Alford "took advantage and I was hit in the eye, and nose and was taken to the floor and seconds later 2 officer's [sic] broke up the fight."
Referring to the statement, the prosecutor asked Lukowski when he had decided he had more to add. Lukowski answered that it was just 2 days prior to trial. The prosecutor also asked to whom Lukowski had given this additional information, and Lukowski answered that he had only told Alford's counsel. Upon further questioning, Lukowski confirmed that he had never shared this additional information with anyone at the jail.

3. SENTENCE
The jury found Alford guilty of assault by a confined person. The court found that Alford was a habitual criminal and sentenced Alford to a term of imprisonment from 10 to 36 years. The court granted Alford credit for the 223 days spent in incarceration awaiting disposition of the assault charge. This incarceration had taken place simultaneously to time spent awaiting trial for the first degree murder charge.

III. ASSIGNMENTS OF ERROR
The State asserts that the trial court erred by granting Alford credit for time served in pretrial and presentence incarceration.
Alford assigns that the trial court erred in (1) denying his motion in limine, (2) not giving his proposed jury instructions and giving jury instructions that were misleading and confusing, (3) entering judgment pursuant to a jury verdict that was based on insufficient evidence, (4) denying his motion for new trial, (5) finding he was a habitual criminal, and (6) ordering an excessive sentence.

IV. STANDARD OF REVIEW
[1] When the State appeals and claims that a sentence imposed on a defendant is excessively lenient, the standard of review is whether the sentencing court abused its discretion in the sentence imposed.[2]
[2] Whether a defendant is entitled to credit for time served is a question of law.[3]
[3] Whether a jury instruction given by a trial court is correct is a question of law.[4]
[4] Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the determination made by the court below.[5]

V. ANALYSIS

1. CREDIT FOR TIME SERVED
[5,6] Because the jail time Alford served awaiting trial on a charge of assault by a confined person was simultaneous with jail time being served awaiting trial for first degree murder, the time was not "solely related" to the assault charge and the trial court lacked statutory authority under § 28-932(2) to give Alford credit for that time. Statutory language is to be given its plain and ordinary meaning.[6] It is not within the province of the courts to read a meaning into a statute that is not there or to read anything direct and plain out of a statute.[7] And we find the language of § 28-932(2) to be clear.
Section 28-932(2) provides that a sentence for assault by a confined person "shall not include any credit for time spent in custody prior to sentencing unless the time in custody is solely related to the offense for which the sentence is being imposed [for assault of a confined person]." "[T]ime spent in custody," by its plain language, is broad and does not distinguish between time spent awaiting conviction for the nonrelated charge and time spent as part of the sentence after conviction of the other charge. In other words, it encompasses both "jail time" and "prison time."[8] Logically, if the time spent "in custody" awaiting trial on a charge of assault by a confined person is simultaneous to time spent awaiting trial on another charge, that time is not "solely related" to the charge of assault by a confined person. Without the charge for assault by a confined person, the defendant would still have been in custody.
In this case, no matter what the surrounding facts or circumstances that might justify lenity in his sentence for assault by a confined person, the judge's order granting Alford credit for time served was unauthorized. Section 28-932 employs the mandatory language that the sentence "shall not" include such a credit, and as a general rule, the use of the word "shall" is considered to indicate a mandatory directive, inconsistent with the idea of discretion.[9]

2. JURISDICTION
But we must consider whether such an unauthorized sentence falls under § 29-2320, which provides that we may reverse a sentence found to be "excessively lenient." The question arises because absent specific statutory authorization, the State, as a general rule, has no right to appeal an adverse ruling in a criminal case.[10] Section 29-2320 allows the State to appeal a sentence in a felony conviction when the prosecutor "reasonably believes, based on all of the facts and circumstances of the particular case, that the sentence is excessively lenient."
[7] As already discussed, the court violated § 28-932 by giving Alford credit for time served while awaiting separate trials on a first degree murder charge and on the unrelated assault by a confined person charge. In effect, the court imposed a sentence that was less than that demanded by law. We conclude that a sentence which is less than that demanded by law is, by definition, "excessively lenient."[11]
We note that in appeals brought under § 29-2320, it has always been a fundamental part of our abuse of discretion standard of review to ensure that the sentence was imposed in accordance with those laws that limit the trial court's sentencing discretion. When an appellate court is reviewing a sentence for its leniency, a sentence imposed by a district court that is within the statutorily prescribed limits will not be disturbed on appeal unless there appears to be an abuse of the trial court's discretion.[12] It is not only a proper, but a necessary, part of our review for excessive leniency that we first consider whether the sentence conforms to the mandates of the sentencing statutes.
Accordingly, in State v. Hamik,[13] in considering whether the defendant's sentence was excessively lenient, we first considered the State's argument that the defendant's sentence of probation for first degree sexual assault violated the mandatory minimum term provided by law. Only after we had concluded that the sentence was within the statutorily prescribed limits did we consider the State's argument that even if lawful, the circumstances of the case demanded a harsher punishment.
We observe that in a different context, we said that "[s]ection 29-2320 does not extend to the appeal of a sentence that is not in conformity with the law."[14] To the extent we suggested that § 29-2320 does not encompass appeals by a prosecutor who argues a sentence is excessively lenient because it falls below statutory sentencing parameters, we disapprove of this statement. We hold that for purposes of § 29-2320, a sentence that falls below the prescribed sentencing limits is simply an example of leniency. We find merit to the State's appeal, and in accordance with the authority granted by Neb. Rev. Stat. § 29-2322 (Reissue 2008), we remand the cause with directions to vacate the credit for time served.

3. ALFORD'S APPEAL
For the following reasons, we find no merit to Alford's appeal.

(a) Timeliness of Evidence of Confinement
Alford asserts that the trial court erred in allowing evidence relevant to Alford's confinement. The court overruled Alford's motion in limine, renewed during trial, alleging the documents were untimely provided during the discovery process and that they were more prejudicial than probative. Alford did not receive a copy of these documents until the morning of the hearing on the assault charge. However, the trial court ruled that there was no surprise to Alford because the documents were public records created in the separate first degree murder case involving Alford and the same defense counsel.
Trial courts have broad discretion with respect to sanctions involving discovery procedures, and their rulings thereon will not be reversed in the absence of an abuse of discretion.[15] An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[16] We find no abuse of discretion in this case.
We conclude that the trial court did not abuse its discretion in concluding that the late disclosure did not prejudice Alford, because he and his counsel already had knowledge that there was documentation of Alford's incarceration. Alford argues that the surprise was that the State would produce this documentation at trial. He then states, somewhat abstractly, that "[o]ne of those factors" defense counsel takes into account "when advising clients whether to settle or proceed to trial . . . is whether or not the State has the evidence to prove a necessary elment."[17] And Alford asserts broadly that the evidence was "prejudicial" because, without it, the State would not be able to obtain a conviction. This is not how we define prejudice in the context of late disclosure.
[10] Whether a prosecutor's late disclosure of evidence results in prejudice depends on whether the information sought is material to the preparation of the defense, meaning that there is a strong indication that such information will play an important role in uncovering admissible evidence, aiding preparation of witnesses, corroborating testimony, or assisting impeachment or rebuttal.[18] Alford does not argue that the evidence of his confinement was prejudicial in any of these ways. If evidence of an element of the offense is public record, then there is no unfair prejudice resulting from the State's failure to explicitly disclose that this evidence will be offered at trial. The defendant should expect that the State will attempt to prove its case, and the lack of such explicit notice neither surprises the defendant nor affects the defendant's ability to prepare witnesses, corroborate testimony, or assist impeachment or rebuttal.

(b) Jury Instructions
[11,12] Alford next argues that the court erred in giving instructions Nos. 3 and 4 and in failing to give his tendered instructions Nos. 1 through 6. In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant.[19] To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction.[20]
Instruction No. 3 stated:
The material elements of the crime of assault by a confined person are:
1. The defendant intentionally, knowingly, or recklessly caused bodily injury to Anthony Lukowski;
2. The act took place on or about February 10, 2008;
3. At the time the act took place, the defendant was legally confined in a jail or correctional or penal institution;
4. The act took place in Sarpy County, Nebraska; and
5. The defendant did not act in self-defense.
If you decide that the State proved each element beyond a reasonable doubt, then you must find the defendant guilty. Otherwise, you must find the defendant not guilty.
Instruction No. 4 stated:
The defendant acted in self defense if:
1. Anthony Lukowski used or threatened force against the defendant; and
2. Under the circumstances as they existed at the time, the defendant reasonably believed that the force he used against Anthony Lukowski was immediately necessary to protect the defendant against any such force used or threatened by Anthony Lukowski.
The fact that the defendant may have been wrong in estimating the danger does not matter so long as there was a reasonable basis for what he believed and he acted reasonably in response to that belief.
Alford's proposed instruction No. 1 was largely the same as the court's instruction No. 3, except for (1) the added introduction that "you must find each of the following elements beyond a reasonable doubt," (2) the addition of the element that the jury find "[t]hat Mario Alford's acts were not to avoid a greater harm," and (3) the fact that it used Alford's name rather than "the defendant." Alford's proposed instruction No. 2 was indiscernible from the court's instruction No. 4 above. Alford's proposed instruction No. 3 stated that "Mario Alford is not required to prove that he acted in self defense. It is up to the State to prove that he did not." Alford's proposed instructions Nos. 6 through 8 sought to present to the jury the lesser offenses of third degree assault and third degree assault, mutual consent.
According to Alford, instruction No. 3 misstates the law by adding the element that he did not act in self-defense. And he claims that instruction No. 3, when read together with instruction No. 4, failed to instruct the jury that "if it found [Alford] acted in self-defense, the State must disprove that he acted in self-defense."[21] Further, Alford argues that "the instructions did not inform the jury that the State must disprove the theory of self-defense beyond a reasonable doubt."[22] We find no merit to these contentions.
Instruction No. 3 places the burden on the State to prove, "beyond a reasonable doubt," that Alford did not act in selfdefense. It places this burden on the State without any prerequisite or limitation. It is true that the defendant carries the initial burden to raise the issue of self-defense as an affirmative defense,[23] but when the defendant has produced sufficient evidence to raise the defense, the issue is one which the State must disprove.[24] Not only was there no prejudice in this case by the instruction given, but it was proper to include the absence of self-defense as one of the elements the State had to prove.[25] We conclude that Alford's proposed instruction that "if it found [Alford] acted in self-defense, the State must disprove that he acted in self-defense"[26] would have simply confused the jury.
[13] Relatedly, we disagree that the jury could have been misled, by the combination of instructions Nos. 3 and 4, to believe that the burden of proving self-defense was placed on Alford. There is no meaningful distinction between given instruction No. 3, that the State was required to prove that Alford "did not act in self-defense," and Alford's proposed instructions, that the State was required to "disprove the theory of self-defense."[27] It is not error for the trial court to refuse to give a defendant's requested instruction where the substance of the requested instruction was covered in the instructions given.[28]
Furthermore, Alford's proposed instruction that he was "not required to prove that he acted in self defense" was simply not necessary when the lack of self-defense was presented to the jury as an element of the State's case in chief. It is understood that if the State is required to prove an element, then the defendant is not required to prove the same. There especially could have been no room for doubt in this particular case when the prosecutor explained to the jury during closing arguments that it was the State's burden to show "each and every one" of the elements in the jury instructions, including that Alford did not act in self-defense.
[14] Finally, Alford argues the court should have instructed the jury on the lesser-included offenses of third degree assault, as described in tendered instructions Nos. 6 through 8. A court must instruct on a lesser-included offense if (1) the elements of the lesser offense are such that one cannot commit the greater offense without simultaneously committing the lesser offense and (2) the evidence produces a rational basis for acquitting the defendant of the greater offense and convicting the defendant of the lesser offense.[29] Alford argues there is a rational basis for acquitting him of assault of a confined person, while convicting him of simple assault, because the exhibits demonstrating his confinement should not have been received into evidence. Having already determined that those exhibits were properly admitted, we find no merit to the argument that there was a rational basis for finding that Alford was not confined at the time of the alleged assault. Therefore, there was no basis upon which the jury could have acquitted Alford of the greater offense while convicting him of the lesser and there was no error in the court's refusal to give the jury Alford's proposed instructions.

(c) Failure to Allow Hearsay Statement
Alford next argues that the trial court erred in sustaining a hearsay objection to proposed testimony by Schoolfield as to what another inmate had told him about the fight. During cross-examination, Schoolfield stated that only one of the other inmates in the unit agreed to tell him what he had observed. Again, Schoolfield testified that the inmate was no longer in the Sarpy County jail. When defense counsel asked Schoolfield what the inmate had said about who started the fight, the court sustained the State's hearsay objection. Defense counsel made an offer of proof that Schoolfield would have testified that Alford accused Lukowski of cheating in a poker game the night before and that Lukowski charged Alford and began hitting Alford first.
The proposed statement was clearly hearsay because it was offered to prove the truth of the matter asserted, i.e., that Lukowski started the fight.[30] The trial court accordingly sustained the State's hearsay objection. When the trial court explained that the statement was hearsay, Alford's counsel did not argue to the trial court that it nevertheless fell under one of the recognized exceptions to the hearsay rule. On appeal, Alford now argues that the statement falls under the residual hearsay exception, Neb. Rev. Stat. § 27-804(2)(e) (Reissue 2008).
[15] Hearsay is not admissible except as provided by the rules of evidence or by other rules adopted by the statutes of the State of Nebraska or by the discovery rules of this court.[31] Therefore, the proponent of the hearsay evidence has the burden of identifying the appropriate exception and demonstrating that the testimony falls within it.[32] And when the opposing party objects to evidence as hearsay and the trial court sustains the objection, the proponent is required to point out the possible hearsay exceptions in order to preserve the point for appeal.[33] Because defense counsel in this case failed to raise the issue of an exception to the hearsay exclusion, the facts relevant to determining whether a hearsay exception applied were never subjected to the factfinding and discretionary functions of the trial judge. We will not address these arguments for the first time on appeal.[34]

(d) Closing Arguments
Alford also argues that he was prejudiced when the trial court sustained an objection to his closing arguments. Defense counsel argued in closing that Alford acted in self-defense, because during the entirety of the fight, Lukowski was trying to choke Alford. Defense counsel explained that Lukowski did not mention these same details in his original statement to Schoolfield simply because he wanted to minimize his culpability. Defense counsel then said:
Now, not only that but the State kind of went after me a little bit. They asked . . . Lukowski you only came up with this new information after you talked with [defense counsel]. Well, absolutely. I'm a lawyer. I'm going to go interview my witnesses, and I went over and talked to . . . Lukowski. And I wrote my opening 
The State objected that these facts were not in evidence, and the objection was sustained by the court.
According to Alford, defense counsel's statements in closing arguments were in response to the State's line of questioning which "inferred that Alford's attorney had persuaded Lukowski to add more details to his story about the altercation."[35] Therefore, Alford argues that the closing argument was proper and that by sustaining the State's objection, the court "left the inference to the jury that Alford's attorney could have possibly persuaded Lukowski to alter his story, thereby calling into question the credibility of Lukowski's testimony."[36]
An examination of the prosecutor's questioning of Lukowski during the case in chief reveals nothing improper. The prosecutor did not allege that defense counsel had persuaded Lukowski to alter his story. Instead, the questioning raised concerns about the veracity of Lukowski's testimony due to the fact that he waited 5 months to add important details to his version of events. Lukowski revealed that he had never shared this new information with the authorities that originally took his statement. And he was led to reveal that he had only shared this information with Alford's counsel. However, that fact was apparently the truth.
And even if improper questioning had occurred, the remedy was an objection at the time of questioning and rehabilitation during recross. The trial court was not obligated to allow defense counsel to address during closing arguments whatever slight occurred during the State's case in chief, real or imagined. We find no error in the trial court's sustaining the State's objection.

(e) Motion for New Trial
[16] Alford argues that the aggregate "irregularities" of the court's not allowing the inmate's hearsay statement into evidence and sustaining the prosecution's objection to the defense's closing arguments, as well as its alleged errors in the jury instructions, warranted a new trial. In a criminal case, a motion for new trial is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed.[37] As we have already addressed each of these arguments separately and found no error, we likewise find no merit to Alford's argument that the court should have granted his motion for new trial.

(f) Sufficiency of Evidence
[17] Alford further claims that the jury's verdict was unsupported by the evidence. In particular, Alford asserts the jury should have concluded that he acted in self-defense. He also alleges there was insufficient evidence demonstrating that Lukowski was injured by Alford. When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[38] In making this determination, the court should not resolve conflicts in the evidence, pass on the credibility of the witnesses, or reweigh the evidence, as these matters are for the finder of fact.[39]
Alford claims he acted in self-defense because Lukowski started the fight and only when Alford was unable to breathe did he retaliate. The extent to which Alford was responding to Lukowski's choking him, however, was a question for the trier of fact. In Lukowski's original statement, he did not mention that he choked Alford at all. Nor was the evidence undisputed that Lukowski was the first aggressor. Lukowski's original statement was that Alford physically attacked him first. And, regardless, while a determination of whether the victim was the first aggressor is an essential element of a self-defense claim,[40] it is not decisive. It does not follow that every time the victim is the first aggressor, the defendant's use of force is justified.
We also note that regardless of who started the fight and whether Lukowski ever choked Alford, Neb. Rev. Stat. § 28-1409 (Reissue 2008), Nebraska's use-of-force statute, states that the use of force upon or toward another person is justifiable when the actor believes that such force is "immediately necessary" for the purpose of protecting himself. Such belief must be reasonable and in good faith.[41] There was evidence in this case from which the jury could have concluded that Alford attacked Lukowski even when Alford was not in immediate danger. In summary, there was sufficient evidence for the jury to conclude that Alford's actions were not justified by self-defense.
We also find the evidence sufficient to demonstrate that Lukowski was injured by the assault. Lukowski was observed with a bloody nose, and he had been observed prior to the fight without any injuries. Although Alford speculates that Lukowski caused his own injuries by head-butting Alford, again, this was a question for the jury.

(g) Admissibility of Prior Convictions
Alford argues that the trial court erred in finding that he was a habitual criminal.[42] Nebraska's habitual criminal statutes provide for enhanced mandatory minimum and maximum sentences for a convicted defendant who has been twice convicted of crimes for terms not less than 1 year.[43] The trial court found that Alford was previously convicted in Nebraska of possession of a controlled substance and convicted in federal court of possession of ammunition. He served a sentence of at least 1 year for each crime. It found, in addition, that Alford was represented by counsel at the time of those two convictions. But Alford asserts that the exhibits documenting these prior convictions lacked the necessary degree of trustworthiness and, as a matter of law, did not satisfy the State's burden of proof.
[18,19] In a proceeding to enhance a punishment because of prior convictions, the State has the burden of proving such prior convictions by a preponderance of the evidence.[44] In addition, the State must prove the defendant was represented by counsel at the time of conviction and sentencing, or had knowingly and voluntarily waived representation for those proceedings.[45]
[20] Neb. Rev. Stat. § 29-2222 (Reissue 2008) states that "a duly authenticated copy of the former judgment and commitment, from any court in which such judgment and commitment was had, for any such crimes formerly committed by the party so charged, shall be competent and prima facie evidence of such former judgment and commitment." However, § 29-2222 does not confine the proof on the issue of the defendant's prior convictions to the documents therein mentioned.[46] The existence of a prior conviction and the identity of the accused as the person convicted may be shown by any competent evidence, including the oral testimony of the accused and duly authenticated records maintained by the courts or penal and custodial authorities.[47]
The possession of a controlled substance conviction was demonstrated by exhibits 8 and 9. Exhibit 8 is a stapled packet prepared by the district court clerk for Douglas County. The 10-page packet contains the information, a journal entry showing Alford was represented by counsel and pled no contest, a signed and stamped order by the trial judge sentencing Alford to probation, and a similar document sentencing Alford to 1 to 3 years' imprisonment after violating probation. The last page of the packet contains the seal of the court and a certification by the deputy clerk that the "above and foregoing is a true [a]nd correct copy as the same appears fully upon the Records and files of this Court now in my charge."
Exhibit 9 is a "pen packet" providing the date Alford was sentenced on the possession charge, the date received, the date discharged, and the classification of the offense. It contains photographs and fingerprints identifying Alford as the subject of the commitment. The certificate of discharge shows that Alford was committed on September 24, 2002, and discharged on November 8, 2003. Exhibit 9 contains a signed letter stating that the information was kept in the normal course of business of the Department of Correctional Services. Attached also is a certification by the records custodian of the central records office, and further certified by the Secretary of State, that the copies were full, true, and correct reproductions of the originals on file.
The federal possession of ammunition charge was demonstrated by exhibits 10 and 11. Exhibit 10 contains 43 pages of various documents pertaining to Alford's agreement with the U.S. District Attorney to plead guilty to being a felon in possession of ammunition.[48] It includes the plea agreement, file stamped and certified by the deputy clerk as an accurate copy and signed by Alford and his counsel. The judge's minutes, certified by the deputy clerk as a copy of a document electronically filed, show Alford's guilty plea, with the appearance of defense counsel, and the court's acceptance of that plea. A judgment of guilt and sentence to 37 months' imprisonment is found in a 6-page order "signed" with the judge's typed name and certified by the deputy clerk as a printed copy of an electronic filing. Another document in exhibit 10 shows that Alford was remanded to the custody of the U.S. Marshal for a prison term of 37 months. This document of imprisonment is signed by the warden and contains a file stamp of the district court and a certification by the deputy clerk.
Exhibit 11 is the "pen packet" for the felon in possession of ammunition charge, which is similar to the pen packet for the possession of a controlled substance conviction. The packet is preceded by a signed "Certificate of Record" by the "Custodian of Records" that "the following and attached records are true and correct copies of records of [the Federal Correctional Institution]." Underneath the signature of the "Custodian of Records" is the title of "Supervisory Inmate Systems Specialist."
[21] Alford first argues that all of the above is insufficient proof of his prior convictions because there is no signature reflecting the court's "'[r]endition'" of the judgments.[49] While we have at times said that the evidence of a prior conviction must reflect a court's "act of rendering judgment,"[50] we have not been referring to the requirements for a final, appealable order under Neb. Rev. Stat. § 25-1301 (Reissue 2008). Section 25-1301 does require a judge's signature and the file stamp before the judgment is considered rendered and final. But in our reference to "rendering judgment," we have referred instead to Neb. Rev. Stat. § 27-901 (Reissue 2008), which sets forth the requirement of authentication or identification.[51] In State v. Thomas, we indicated that there is no requirementfor purposes of enhancementthat a judge's signature appear on a judgment of conviction.[52]
Alford also argues that the form of the authentication or identification of the prior convictions is lacking. Alford takes issue with the fact that there was no certification on the actual page of the judge's minutes for the possession of a controlled substance charge. He complains that the federal certification "only attests to the fact that the document was filed in the U.S. District Court for the District of Nebraska."[53] He also has several issues with the federal pen packet, arguing that "the inmate systems manager may not be the proper person to certify the authenticity of United States District Court records,"[54] that the signature is signed in a different-colored ink than the rest of the document, that the signature of acknowledgment of receipt is missing, and that the date and signature of the warden are missing. We find the documents sufficiently authenticated to serve as evidence demonstrating the prerequisite convictions by a preponderance of the evidence.
In reviewing criminal enhancement proceedings, a judicial record of this state, or of any federal court of the United States, may be proved by the production of the original or by a copy thereof, certified by the clerk or the person having the legal custody thereof, and authenticated by his or her seal of office, if he or she has one.[55] The seals and certifications purport to be by a person having legal custody of the documentation and serve as prima facie evidence that they are, absent evidence to the contrary. And nowhere is it required that the certification be on every single page of a document when it is clear that the certification refers to several pages. Finally, we find the attestation that the federal documents were filed in the U.S. District Court for the District of Nebraska to be sufficient.

(h) Excessive Sentence
Finally, Alford argues that his sentence was excessive. Alford argues that the Legislature has expressed a sentencing policy in favor of probation and, without any specific examples, asserts that his sentence was greater than sentences imposed on other defendants convicted of assault by a confined person. Assault by a confined person is punishable as a Class IIIA felony[56] with an authorized sentencing range from 0 to 5 years' imprisonment.[57] But a person found to be a habitual criminal under § 29-2221(1) must be sentenced to a minimum prison term of 10 years, with a maximum term of not more than 60 years. Alford was sentenced to 10 to 36 years' imprisonment. The court specifically found imprisonment was necessary for the protection of the public, because Alford would likely engage in additional criminal conduct if placed on probation and because a lesser sentence will depreciate the seriousness of the offense or promote disrespect for the law.
[22,23] Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed.[58] Whether probation or incarceration is ordered is likewise a choice within the discretion of the trial court, whose judgment denying probation will be upheld in the absence of an abuse of discretion.[59] We conclude that the trial court did not abuse its discretion in sentencing Alford to 10 to 36 years' imprisonment.

VI. CONCLUSION
We remand the cause with directions to the trial court to vacate the credit for time served. In all other respects, we affirm the conviction and sentence.
Affirmed in part, and in part reversed and remanded with directions.
HEAVICAN, C.J., not participating.
NOTES
[1] See State v. Vasquez, 271 Neb. 906, 716 N.W.2d 443 (2006).
[2] State v. Reynolds, 235 Neb. 662, 457 N.W.2d 405 (1990), disapproved on other grounds, State v. Messersmith, 238 Neb. 924, 473 N.W.2d 83 (1991).
[3] See State v. Harker, 8 Neb. App. 663, 600 N.W.2d 488 (1999).
[4] State v. Brown, 258 Neb. 346, 603 N.W.2d 456 (1999).
[5] State v. Moore, 277 Neb. 111, 759 N.W.2d 698 (2009).
[6] State v. McKinney, 273 Neb. 346, 730 N.W.2d 74 (2007).
[7] State v. Stafford, ante p. 109, 767 N.W.2d 507 (2009).
[8] See State v. Fisher, 218 Neb. 479, 356 N.W.2d 880 (1984).
[9] State v. Hense, 276 Neb. 313, 753 N.W.2d 832 (2008); Bazar v. Department of Motor Vehicles, 17 Neb. App. 910, ___ N.W.2d ___(2009).
[10] See State v. Hense, supra note 9.
[11] See § 29-2320.
[12] State v. Moore, 274 Neb. 790, 743 N.W.2d 375 (2008).
[13] State v. Hamik, 262 Neb. 761, 635 N.W.2d 123 (2001).
[14] Glantz v. Hopkins, 261 Neb. 495, 500, 624 N.W.2d 9, 13 (2001).
[15] State v. Gutierrez, 272 Neb. 995, 726 N.W.2d 542 (2007).
[16] State v. Floyd, 272 Neb. 898, 725 N.W.2d 817 (2007), disapproved on other grounds, State v. McCulloch, 274 Neb. 636, 742 N.W.2d 727 (2007).
[17] Brief for appellee on cross-appeal at 18.
[18] State v. Gutierrez, supra note 15.
[19] State v. Iromuanya, 272 Neb. 178, 719 N.W.2d 263 (2006).
[20] Id.
[21] Brief for appellee on cross-appeal at 20.
[22] Id.
[23] See, State v. Urbano, 256 Neb. 194, 589 N.W.2d 144 (1999); State v. Kinser, 252 Neb. 600, 567 N.W.2d 287 (1997).
[24] Id.
[25] See State v. Warren, 9 Neb. App. 60, 608 N.W.2d 617 (2000).
[26] Brief for appellee on cross-appeal at 20.
[27] Id.
[28] State v. Gales, 269 Neb. 443, 694 N.W.2d 124 (2005).
[29] State v. Robinson, 272 Neb. 582, 724 N.W.2d 35 (2006).
[30] See, State v. Clark, 255 Neb. 1006, 588 N.W.2d 184 (1999); Neb. Rev. Stat. § 27-801(3) (Reissue 2008).
[31] See State v. Hembertt, 269 Neb. 840, 696 N.W.2d 473 (2005).
[32] See, Odemns v. U.S., 901 A.2d 770 (D.C. 2006); State v. Cagley, 638 N.W.2d 678 (Iowa 2001). See, also, Noel v. Com., 76 S.W.3d 923 (Ky. 2002); Com. v. Smith, 545 Pa. 487, 681 A.2d 1288 (1996); Volkswagen of America, Inc. v. Ramirez, 159 S.W.3d 897 (Tex. 2004); Robinson v. Com., 258 Va. 3, 516 S.E.2d 475 (1999).
[33] See, People v. Ramos, 15 Cal. 4th 1133, 938 P.2d 950, 64 Cal. Rptr. 2d 892 (1997); Odemns v. U.S., supra note 32; State v. Reed, 282 S.W.3d 835 (Mo. 2009); Johnson v. State, 925 S.W.2d 745 (Tex. App. 1996).
[34] See Weber v. Gas `N Shop, ante p. 49, 767 N.W.2d 746 (2009).
[35] Brief for appellee on cross-appeal at 31.
[36] Id.
[37] State v. Archie, 273 Neb. 612, 733 N.W.2d 513 (2007).
[38] State v. Walker, 272 Neb. 725, 724 N.W.2d 552 (2006).
[39] Id.
[40] See State v. Lewchuk, 4 Neb. App. 165, 539 N.W.2d 847 (1995).
[41] State v. Cowan, 204 Neb. 708, 285 N.W.2d 113 (1979).
[42] See Neb. Rev. Stat. § 29-2221 (Reissue 2008).
[43] Id.
[44] See, State v. Robinson, supra note 29; State v. Thomas, 268 Neb. 570, 685 N.W.2d 69 (2004).
[45] See State v. Hall, 270 Neb. 669, 708 N.W.2d 209 (2005).
[46] State v. Coffman, 227 Neb. 149, 416 N.W.2d 243 (1987).
[47] State v. Thomas, supra note 44.
[48] 18 U.S.C. § 922(g)(1) (2006).
[49] Brief for appellee on cross-appeal at 35.
[50] State v. Linn, 248 Neb. 809, 812, 539 N.W.2d 435, 438 (1995).
[51] See id.
[52] State v. Thomas, supra note 44. See, also, State v. Gales, supra note 28; State v. Linn, supra note 50; State v. Fletcher, 8 Neb. App. 498, 596 N.W.2d 717 (1999).
[53] Brief for appellee on cross-appeal at 37.
[54] Id. at 38.
[55] State v. Thomas, supra note 44.
[56] § 28-932(1).
[57] Neb. Rev. Stat. § 28-105(1) (Reissue 2008).
[58] State v. Kuehn, 273 Neb. 219, 728 N.W.2d 589 (2007).
[59] State v. Roberts, 261 Neb. 403, 623 N.W.2d 298 (2001).