State of Nebraska, appellee, v.
Shawn R. Erpelding, appellant.
___ N.W.2d ___

Filed December 31, 2015.   No. S-14-813.

1. **Statutes: Jury Instructions: Appeal and Error.** Statutory interpretation and whether jury instructions are correct are questions of law, which an appellate court reviews independently of the lower court's determination.
2. **Convictions: Evidence: Appeal and Error.** When reviewing the sufficiency of the evidence to sustain a criminal conviction, it is not the province of an appellate court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or reweigh the evidence; such matters are for the finder of fact.
3. ____: ____: ____. When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
4. **Sentences: Appeal and Error.** When reviewing a sentence within the statutory limits, whether for leniency or excessiveness, an appellate court reviews for an abuse of discretion.
5. **Criminal Law: Intent: Words and Phrases.** In the context of a criminal statute such as Neb. Rev. Stat. § 28-706 (Reissue 2008), "intentionally" means willfully or purposely, and not accidentally or involuntarily.
6. **Criminal Law: Child Support: Proof.** Generally, the burden of proving an exemption to criminal nonsupport is on the party claiming it.
7. **Criminal Law: Child Support: Proof: Intent.** The State is not required to prove that a defendant was able to pay in order to show that he or she intentionally failed to provide support.
8. **Criminal Law: Child Support: Evidence: Intent.** Evidence of ability to pay support, coupled with evidence of nonpayment, is key circumstantial evidence of an intent not to pay.

9. ____: ____: ____: ____. A defendant may present evidence to establish an "inability to pay" support in order to disprove intent.

10. **Criminal Law: Intent.** Intent may be inferred from the words or acts of a defendant and from the circumstances surrounding the incident.

11. **Child Support.** An obligation to support a minor child is not affected by the assignment of child support to the Department of Health and Human Services, which occurs pursuant to Neb. Rev. Stat. § 43-512.07 (Cum. Supp. 2014).

12. **Judgments: Collateral Attack.** A collateral attack occurs when the validity of a judgment is attacked in a way other than in a proceeding in the original action.

13. **Collateral Attack: Jurisdiction.** Unless grounded upon the court's lack of jurisdiction over the parties or subject matter, collateral attacks are impermissible.

14. **Collateral Attack.** The rule against collateral attacks applies equally to interlocutory orders and final judgments.

15. **Collateral Attack: Jurisdiction.** The policy of the collateral bar rule is to respect the jurisdiction of the court rendering the order and to encourage obedience of courts' orders.

16. **Child Support: Judgments: Appeal and Error.** A temporary child support order is appealable from a final judgment on the issue of support.

17. **Jury Instructions: Appeal and Error.** Failure to object to a jury instruction after it has been submitted to counsel for review precludes raising an objection on appeal absent plain error indicative of a probable miscarriage of justice.

18. **Appeal and Error.** Plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process.

19. **Jury Instructions.** As a general rule, in giving instructions to the jury, it is proper for the court to describe the offense in the language of the statute.

20. **Jury Instructions: Statutes.** The law does not require that a jury instruction track the exact language of the statute.

21. **Lesser-Included Offenses: Jury Instructions: Evidence.** A court must instruct a jury on a lesser-included offense if (1) the elements of the lesser offense are such that one cannot commit the greater offense without simultaneously committing the lesser offense and (2) the evidence produces a rational basis for acquitting the defendant of the greater offense and convicting the defendant of the lesser offense.

22. **Effectiveness of Counsel: Jury Instructions.** Defense counsel is not ineffective for failing to raise an argument that has no merit or for

failing to object to jury instructions that, when read together and taken as a whole, correctly state the law and are not misleading.

23. **Criminal Law: Statutes.** It is a fundamental principle of statutory construction that penal statutes be strictly construed, and it is not for the courts to supply missing words or sentences to make clear that which is indefinite, or to supply that which is not there.

24. **Habitual Criminals: Notice: Time.** Neb. Rev. Stat. § 29-2221 (Reissue 2008) requires 3 days' notice of an enhancement hearing and not merely notice of the sentencing hearing.

25. **Statutes: Legislature: Intent.** When interpreting a statute, a court's objective is to determine and give effect to the legislative intent of the enactment.

26. **Habitual Criminals: Notice.** The purpose of the notice requirement in Neb. Rev. Stat. § 29-2221 (Reissue 2008) is to ensure that the defendant has reasonable time to prepare a defense.

27. **Constitutional Law: Sentences.** The Eighth Amendment's proscription of cruel and unusual punishment prohibits not only barbaric punishments, but also sentences that are grossly disproportionate to the crime committed.

28. **Constitutional Law: Habitual Criminals: Legislature: Intent.** When a court is faced with a habitual criminal enhancement, its Eighth Amendment proportionality review must take into account the Legislature's goals in enacting such statute.

29. **Constitutional Law: Sentences.** With regard to whether the length of a sentence constitutes cruel and unusual punishment, the Nebraska Constitution does not require more than does the Eighth Amendment to the U.S. Constitution.

30. **Sentences.** When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the violence involved in the commission of the crime.

Appeal from the District Court for Buffalo County: JOHN P. ICENOGLE, Judge. Affirmed.

Jonathan R. Brandt, of Anderson, Klein, Swan & Brewster, for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

Heavican, C.J., Wright, Connolly, McCormack, Miller-Lerman, and Cassel, JJ.

McCormack, J.

## I. NATURE OF CASE

Shawn R. Erpelding was convicted in a jury trial in the district court for Buffalo County, Nebraska, of four counts of criminal nonsupport under Neb. Rev. Stat. § 28-706 (Reissue 2008) for failure to pay 4 months of child support totaling $900. After his sentences were enhanced by the habitual criminal statute, Neb. Rev. Stat. § 29-2221 (Reissue 2008), he was sentenced to concurrent terms of 10 to 15 years on each count. Erpelding appeals both his convictions and his sentences.

## II. BACKGROUND

On May 14, 2012, Erpelding filed a complaint with the district court to establish paternity, custody, visitation, and child support of his 4-year-old daughter, Grace Erpelding, who was born out of wedlock. In July 2012, the court entered a temporary parenting plan granting primary physical and legal custody of Grace to her mother, Diane Southall. On August 20, the court ordered Erpelding to pay temporary child support in the amount of $225 per month.

The district court later held a final hearing on the pleadings to establish paternity, custody, parenting time, and child support. Despite adequate notice of the hearing, Erpelding did not appear. Pursuant to an order filed July 15, 2013, custody was awarded to Southall. Erpelding was then ordered to pay child support in the amount of $379 per month. The July 15 order did not mention the temporary child support obligation or any arrearages.

Erpelding failed to make any payments on the temporary support order for over a year. He also did not make any payments on the July 15, 2013, child support order during that time. On August 5, he was charged with criminal nonsupport pursuant to § 28-706 based on his failure to pay the first 4 months of the temporary child support obligation. He was also

charged with being a habitual criminal per § 29-2221 in the information filed September 9.

### 1. TEMPORARY CHILD SUPPORT ORDER

The journal entry filed August 20, 2012—the temporary child support order—was entered into evidence at trial. It reflects that Erpelding failed to provide adequate evidence of his income for the district court to determine the amount of temporary child support he was to pay:

> [Erpelding] has provided the court with an affidavit which is essentially, unenlightening. . . . Erpelding states that he is and has been engaged in a carpentry business for a number of years. He has not, apparently, filed income tax returns since tax year 2008. He states that his books reflect that he essentially breaks even in his business, though he admits he has had the ability to withdraw adequate funds to support his family prior to the departure of . . . Southall from his home. Essentially, the court is unable to determine the actual extent of any income being earned by . . . Erpelding and has been advised that . . . Southall has no current earning capacity. Absent a better showing of actual income, profit, and the nature to which business income has been utilized for personal expenses, the court has no real alternative but to pluck a number out of the air.

Erpelding did not attempt to appeal that temporary child support order or the July 15, 2013, judgment.

### 2. EFFORTS TO COLLECT

Southall began to receive Aid to Dependent Children (ADC) assistance for Grace through the Department of Health and Human Services (DHHS) in August 2012. By operation of law, child support was assigned to DHHS.[1] DHHS automatically referred Erpelding's case to Jann Davidson, a support enforcement officer with the Buffalo County Attorney's office.

---

[1] See Neb. Rev. Stat. § 43-512.07 (Cum. Supp. 2014).

As an enforcement officer, Davidson has the authority to take a number of enforcement actions, including suspending delinquent parties' operator's licenses, as well as professional and recreational licenses. She apparently took such action against Erpelding. On December 13, 2012, Erpelding received a notice of intent to suspend his operator's and recreational licenses due to his delinquent child support payments. This notice was in addition to the regular notices that Erpelding received monthly.

In March 2013, Erpelding's operator's and recreational licenses were both suspended. Despite Davidson's efforts, she received no payments and no communication from Erpelding. She eventually referred his case for criminal prosecution.

On October 8, 2013, 2 months after Erpelding was charged with criminal nonsupport, Erpelding paid $857 in child support. About a week after his payment, he contacted Davidson to find out how to get his operator's license back. Davidson testified that her office usually requires 3 months' worth of payments, a withholding, and at least one payment from that withholding before it will certify compliance with the Department of Motor Vehicles. But, in this case, Davidson agreed to give Erpelding credit for the $857 in payments he had already made and to allow his license to be reinstated if he let her put into place a withholding from his employment. Erpelding disclosed to Davidson the identity of one of his employers, and Davidson was able to initiate the withholding. In addition to the $857 payment, Davidson was able to collect $644.95 less than a month later.

At Erpelding's trial on nonsupport, Erpelding adduced evidence suggesting that he had provided some undocumented support to Grace. Southall testified that Erpelding paid half of Grace's daycare expenses directly to Southall and provided things for Grace during visitations. But, on cross-examination, Southall admitted she had previously testified at the hearing on custody and support that she had not received any support from Erpelding.

### 3. Ability to Pay Child Support

The State called three witnesses who testified about Erpelding's financial status in the 3 months preceding the months that he was charged with nonpayment (May, June, and July 2012), as well as during those months he was charged with nonpayment (August, September, October, and November 2012).

Vikki Stamm, an attorney in Buffalo County, testified that she hired Erpelding to construct a building for her in May 2012. Stamm agreed to pay Erpelding $8,500 total for labor, half to be paid up front and half to be paid upon completion by the end of July. On May 7, Stamm paid Erpelding $4,250. Stamm testified that Erpelding began work and had a crew of four or five men working with him. After Erpelding failed to show up consistently and Stamm saw his business vehicle at other farms and businesses, she fired him mid-July before he completed the project. Stamm testified that at the time she terminated Erpelding, about 40 percent of the project was completed, and that she did not pay Erpelding any additional money. She also did not get back any part of the $4,250 already paid.

Collin Nabity, a Buffalo County business owner, testified that he hired Erpelding to do multiple jobs over the years, including building a shed in the summer of 2012. Nabity testified that between June 29 and July 21, 2012, he paid Erpelding $2,000 for labor to build the shed. Nabity said Erpelding had a crew working with him, but did not know how much the crew was paid.

Wade Regier, a former branch manager of the Pinnacle Bank in Palmer, Nebraska, also testified to Erpelding's financial situation. Regier testified that by June or July 2012, Erpelding had fallen behind on payments for prior loans made to him by Pinnacle Bank. In October 2012, Erpelding's Pinnacle Bank debt was consolidated into a single loan of $17,951.90. Under this "new" loan, Erpelding was required to make monthly payments of $586.31 to begin on November 24, 2012.

Pinnacle Bank took as security for the loan a motorcycle, three pickup trucks, a "Bobcat," and a camper trailer (Erpelding's home), which Erpelding estimated to be valued at $31,500 total. Regier testified that at the time of Erpelding's October 2012 loan application, Erpelding represented that he had work lined up and had listed a few references.

Erpelding's loan application with Pinnacle Bank showed additional assets, monthly obligations, and outstanding judgments against him. Additional assets included tools and an enclosed trailer, which Erpelding valued at $25,000 at the time of his loan. The loan application showed monthly expenses of $1,136 for housing and a vehicle. No value was given for the outstanding judgments, but he listed "Care Credit - teeth," "Frontier," and "Verizon - cellphone." It also appears Erpelding filed bankruptcy in 2007.

Regier testified that Erpelding attempted to make at least partial payments on the loan. Based on Regier's testimony that the bank attempted to recover the debt in 2013 and seized all available assets, it appears Erpelding must have eventually stopped making payments.

### 4. Jury Instructions on Criminal Nonsupport

Under § 28-706, a person commits criminal nonsupport if he or she "intentionally fails, refuses, or neglects to provide proper support which he or she knows or reasonably should know he or she is legally obliged to provide to a . . . minor child." That crime is a misdemeanor unless "it is in violation of any order of any court." If in violation of a court order, the crime is a felony.

The jury was instructed that the elements of the crime charged were as follows:

(1) The defendant, . . . Erpelding, intentionally failed, refused, or neglected to provide proper support for his minor child, Grace . . . , born in 2008;

(2) That [Erpelding] knew he was legally obliged to provide support to that child by an order of the District

Court of Buffalo County, Nebraska, entered on August 20, 2012, in Case CI 12-291;

(3) That these events occurred [in August, September, October, and November 2012]; and

(4) These events occurred in Buffalo County, Nebraska. Erpelding's trial counsel did not object to these instructions and did not offer additional instructions. The jury found Erpelding guilty on all four counts of criminal nonsupport.

### 5. Habitual Criminal Enhancement Hearing

On June 12, 2014, about a week after his conviction, Erpelding was ordered to appear for the sentencing hearing to be held on August 22. The order did not contain a separate notice that the habitual criminal enhancement hearing required by § 29-2221 was to occur the same day.

Habitual criminal enhancement is governed by § 29-2221, which provides:

(2) . . . If the accused is convicted of a felony, before sentence is imposed a hearing shall be had before the court alone as to whether such person has been previously convicted of prior felonies. The court shall fix a time for the hearing and notice thereof shall be given to the accused *at least three days prior thereto*. At the hearing, if the court finds from the evidence submitted that the accused has been convicted two or more times of felonies and sentences imposed therefor by the courts of this or any other state or by the United States, the court shall sentence such person so convicted as a habitual criminal.

(Emphasis supplied.)

At the sentencing hearing, Erpelding objected to proceeding on the habitual criminal count. He asked that the count be dismissed on the grounds that he did not receive the 3 days' notice required by § 29-2221.

The State argued it was not required to give separate notice of the enhancement hearing, because Erpelding should have

known that such hearing would occur immediately before the sentencing hearing by virtue of the fact that § 29-2221 requires the enhancement hearing to take place before sentencing. The State cited *State v. Poe*,[2] a Nebraska Court of Appeals case not designated for publication in the permanent law reports, for the proposition that the purpose of the notice requirement in § 29-2221 is to ensure that the defendant has a reasonable time to prepare a defense. Based on *Poe*, the State argued that Erpelding had been given notice of the district court's setting of the sentencing date and was aware of the habitual criminal allegations in the information, which were filed almost a year before the enhancement hearing. Thus, the State argued, there was no lack of notice and no prejudice to Erpelding. The sentencing judge reviewed *Poe*, agreed with the State, and allowed the hearing to proceed.

Erpelding's criminal history includes two prior felonies. In 1995, he was convicted of aggravated assault with a deadly weapon; he was sentenced to 7½ years' imprisonment and served less than 7 years. In 2004, Erpelding pled no contest to his charge of felon in possession of a deadly weapon; he was sentenced to 18 months to 3 years' imprisonment and served only 11 months 7 days.

Besides those felonies on which his habitual criminal enhancement was based, Erpelding has been convicted of a number of other crimes. In December 2004, Erpelding was convicted of "Criminal Mischief, $500 to $1,500" and "Avoid[ing] Arrest." He was sentenced to 1 year of imprisonment for each of those crimes. In 2005, he was convicted of "Deliver/Intent to Deliver Controlled Substances" and was sentenced to 5 years' probation. In 2011, he was convicted of "Driving Under the Influence." In 2012, he was found guilty of "Steal[ing] Money o[r] Goods, less than $300," and in June 2014, he was convicted of "Attempted Unlawful Possession of a Deadly

---

2 *State v. Poe*, No. A-91-102, 1992 WL 90034 (Neb. App. May 5, 1992) (not designated for permanent publication).

Weapon." These crimes are in addition to a number of traffic violations, including six speeding tickets, four instances of driving without a valid operator's license, and three incidents of driving under suspension.

After both parties were heard, the district court stated:

> I don't think the Legislature clearly intended that the habitual criminal enhancement would be attached to a criminal non-support conviction. It was clearly the purpose of the Legislature to punish people who were habitual criminal[s], particularly in the sense of either violent crimes or crimes that create substantial hazard to society and the community. Nonetheless they didn't make an exception. I think it is unusual and probably not within the intent of our Legislature that an enhancement be attached to this type of a Class IV felony. But nonetheless I don't have a choice. That's what the Legislature requires me to do.

The court sentenced Erpelding to concurrent terms of 10 to 15 years' imprisonment on each count. Erpelding appeals and is no longer represented by trial counsel.

## III. ASSIGNMENTS OF ERROR

Erpelding asserts, renumbered and restated, that (1) there was insufficient evidence to support a finding of felony nonsupport, (2) the district court violated the Sixth Amendment of the federal Constitution when it failed to submit to the jury the issue of whether Erpelding's nonsupport was in violation of any order of any court, (3) the district court erred for failing to require a jury instruction on a lesser-included offense of misdemeanor criminal nonsupport and that his counsel was ineffective for not requesting one, (4) the district court erred in finding Erpelding was a habitual criminal and enhancing his sentences, and (5) Erpelding received excessive and illegal sentences contrary to the Eighth Amendment of the federal Constitution, as well as the state Constitution.

## IV. STANDARD OF REVIEW

[1] Statutory interpretation and whether jury instructions are correct are questions of law, which an appellate court reviews independently of the lower court's determination.[3]

[2,3] When reviewing the sufficiency of the evidence to sustain a criminal conviction, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or reweigh the evidence; such matters are for the finder of fact.[4] The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[5]

[4] When reviewing a sentence within the statutory limits, whether for leniency or excessiveness, an appellate court reviews for an abuse of discretion.[6]

## V. ANALYSIS

A person commits the misdemeanor of criminal nonsupport when he or she "*intentionally* fails, refuses, or neglects to provide proper support which he or she knows or reasonably should know he or she is legally obliged to provide to a spouse [or] minor child."[7] "[I]f it is in violation of any order of any court," the crime is a Class IV felony.[8]

---

[3] See *State v. Loyuk*, 289 Neb. 967, 857 N.W.2d 833 (2015).

[4] See, *State v. Nolan*, 283 Neb. 50, 807 N.W.2d 520 (2012); *State v. Epp*, 278 Neb. 683, 773 N.W.2d 356 (2009); *State v. Davis*, 277 Neb. 161, 762 N.W.2d 287 (2009).

[5] *State v. Covey*, 290 Neb. 257, 859 N.W.2d 558 (2015); *State v. Nave*, 284 Neb. 477, 821 N.W.2d 723 (2012).

[6] *State v. Parminter*, 283 Neb. 754, 811 N.W.2d 694 (2012).

[7] § 28-706(1) (emphasis supplied).

[8] § 28-706(7).

## 1. Insufficient Evidence

Erpelding attacks the sufficiency of the evidence on almost every element of felony nonsupport. Erpelding argues that the State failed to prove Erpelding's ability to pay and that, as a result, there was insufficient evidence to demonstrate Erpelding *intentionally* withheld support. Erpelding also argues that any nonsupport was really to DHHS and not to his minor child. Finally, Erpelding attacks the validity of the underlying order and argues that his failure to pay could not have been "in violation of any order of any court."[9]

### (a) Intent

Erpelding contends that the State failed to demonstrate he had the requisite intent to commit the crime of nonsupport.

Both parties argue under the assumption that the State must, and has the burden to, prove that Erpelding was able to pay in order to show that he intentionally failed to provide support. Erpelding argues that the State failed to produce evidence of his income sufficient to demonstrate he was able to pay. The State, in contrast, asserts that Erpelding owned his own business and was not out of work during the months he was charged with nonsupport. The State argues that "[i]f Erpelding was not earning enough to pay his support obligation with his business, then he should have taken a second job to make ends meet . . . ."[10] The State also lists Erpelding's assets and contends that he could have sold them to pay his obligation. Some other states' nonsupport statutes explicitly make sufficient ability to provide support an element of the crime,[11] and other states' nonsupport statutes provide for an affirmative "inability

---

[9] Brief for appellant at 23.

[10] Brief for appellee at 16.

[11] 23 Am. Jur. 2d *Desertion and Nonsupport* § 42 (2013) (citing *Streater v. Cox*, 336 Fed. Appx. 470 (6th Cir. 2009); *Brooke v. State*, 99 Fla. 1275, 128 So. 814 (1930)).

to pay" defense.[12] Nebraska's nonsupport statute does neither; instead, § 28-706 merely requires proof that the defendant *intentionally* failed to support his minor child.

[5] We have said that in the context of a criminal statute such as § 28-706, "intentionally" means willfully or purposely, and not accidentally or involuntarily.[13] But it does not follow that the State must prove beyond a reasonable doubt, as part of its prima facie case, both that the defendant's nonpayment was intentional *and* that the defendant's nonpayment was not accidental and not involuntary, e.g., that the defendant had the ability to pay.

[6] Requiring the State to prove that the defendant's failure to provide support was not accidental and not involuntary would force the State to try to prove a negative with information not in its control. Generally, the burden of proving an exemption rests on the party claiming it.[14]

[7] We thus conclude that the State is not required to prove that the defendant was able to pay in order to show that he or she intentionally failed to provide support.

[8] Nevertheless, evidence of ability to pay is not irrelevant to the question of whether the defendant intentionally failed to provide support. Often, evidence of ability to pay, coupled with evidence of nonpayment, is key circumstantial evidence of an intent not to pay.[15]

[9] And, of course, a defendant may present evidence to establish an "inability to pay" in order to disprove intent.

---

[12] See, Ind. Code Ann. § 35-46-1-5 (LexisNexis 2009); Tex. Penal Code Ann. § 25.05 (West 2011).

[13] *State v. Bright*, 238 Neb. 348, 470 N.W.2d 181 (1991); *State v. Eichelberger*, 227 Neb. 545, 418 N.W.2d 580 (1988).

[14] See *Hamilton Cty. EMS Assn. v. Hamilton Cty.*, 291 Neb. 495, 866 N.W.2d 523 (2015).

[15] See, *State v. Menuey*, 239 Neb. 513, 476 N.W.2d 846 (1991); *State v. Bright, supra* note 13; *State v. Meyer*, 236 Neb. 253, 460 N.W.2d 656 (1990); *State v. Eichelberger, supra* note 13.

Indeed, Erpelding's trial counsel argued during his closing statement that Erpelding did not have the financial ability to pay his child support obligation and thus could not have intended not to pay. Erpelding brought up evidence that he had fallen behind on his loan payments and had various expenses. But the trier of fact implicitly rejected these arguments. And we view the evidence in the light most favorable to the State.

Although Erpelding's precise income is not clear, viewing the evidence most favorable to the State, we conclude that an ability to pay could be inferred from the totality of the evidence and that the jury could have considered such ability to pay in evaluating whether Erpelding intentionally failed to provide for his minor child.

The evidence shows Erpelding was not without work during or in the 3 months preceding those months he was charged with nonsupport. He had at least two construction jobs in May, June, and July 2012. From Stamm's testimony that Erpelding's business trailer was seen at other farms and businesses, and from Regier's testimony that Erpelding represented he had work lined up, a jury could infer that Erpelding was also engaged in other jobs during that time.

The fact that Erpelding made partial payments on his bank loan and was able to pay over 5 months' worth of child support payments, or $1,252.95, during the 1-month period from October 8 to November 8, 2013, in order to have his license reinstated, also suggests that Erpelding had the ability to pay before that time, but simply chose not to.

Because we conclude that an ability to pay could be inferred without requiring Erpelding to sell the tools and vehicle used in his business, we do not respond to the State's argument that Erpelding should have sold them to pay his child support obligation.

[10] Evidence of ability to pay is not the only circumstantial evidence that may be used to prove intent to commit the crime

of nonsupport. We have said that intent may be inferred from the words or acts of the defendant and from the circumstances surrounding the incident.[16]

Assuming a defendant has notice of the support obligation at issue, intent not to pay can be inferred from a continuous failure to make even partial payments and from a failure to communicate with child support services until after his or her licenses were suspended and he or she was charged with criminal nonsupport.[17]

Although Erpelding received monthly notices of his child support obligation, he did not make even a partial payment for over a year. He did not dispute the amount, contact child support services, or appear to make any effort to satisfy his child support obligations during that time. It was only after Erpelding's operator's license was suspended and after he was charged with felony nonsupport that Erpelding made any payments or reached out to child support services.

In evaluating whether Erpelding intentionally failed to pay support, the jury was free to reject Southall's testimony that Erpelding paid half of Grace's daycare directly to Southall and supported Grace during his visitations. After all, Southall admitted she had previously testified at a custody hearing that she had never received any child support from him.

Viewing the evidence in a light most favorable to the State, we conclude that a reasonable trier of fact could find, beyond a reasonable doubt, that Erpelding intentionally failed, refused, or neglected to pay the child support for the months of August, September, October, and November 2012.

### (b) Nonsupport to His Minor Child

[11] We quickly dispose of Erpelding's meritless argument that his nonsupport was really to DHHS and not to his minor

---

[16] See, *State v. Bright, supra* note 13; *State v. Eichelberger, supra* note 13.

[17] See *In re Interest of Gabriella H.*, 289 Neb. 323, 855 N.W.2d 368 (2014).

child. An obligation to support a minor child is not affected by the assignment of child support to DHHS, which occurred here by operation of law upon Southall's receipt of ADC support for Grace.[18]

### (c) Validity of Temporary Child Support Order

Erpelding next contends that any failure to support his minor child could not have been "a violation of any order of any court," because the underlying temporary child support order was "invalid," and he claims that his trial counsel was ineffective for failing to challenge it at his criminal nonsupport trial.[19] The State responds that his trial counsel could not be ineffective for failing to launch an impermissible collateral attack. We agree with the State.

[12,13] A collateral attack occurs when the validity of a judgment is attacked in a way other than in a proceeding in the original action.[20] Unless grounded upon the court's lack of jurisdiction over the parties or subject matter, collateral attacks are impermissible.[21]

Erpelding does not attack the underlying temporary child support order on a jurisdictional basis; rather, he argues that the order was invalid because no child support calculation was attached and because "the district court . . . 'pluck[ed] a number out of the air.'"[22] Nonjurisdictional defects, such as the one Erpelding alleges, render a judgment voidable, not void, and may only be attacked directly.[23] Thus, any challenge

---

[18] See § 43-512.07.

[19] Brief for appellant at 12, 13.

[20] See *State v. Smith*, 269 Neb. 773, 696 N.W.2d 871 (2005).

[21] *State v. Macek*, 278 Neb. 967, 774 N.W.2d 749 (2009); *State v. Smith, supra* note 20.

[22] Brief for appellant at 12.

[23] *Mayfield v. Hartmann*, 221 Neb. 122, 375 N.W.2d 146 (1985); *State ex rel. Casselman v. Macken*, 194 Neb. 806, 235 N.W.2d 867 (1975).

to the temporary support order at his criminal nonsupport trial would have been an impermissible collateral attack. As a matter of law, counsel cannot be ineffective for failing to raise a meritless argument.[24]

Erpelding takes the position that a challenge of the underlying order at his nonsupport trial would not have been a collateral attack on a judgment, because, he argues, the temporary child support order was not a final, appealable order. This argument assumes that an interlocutory order can be collaterally attacked for reasons other than the court's lack of jurisdiction over the parties or the subject matter.

[14,15] It is well established that the rule against collateral attacks applies equally to interlocutory orders and final judgments.[25] The broad application of the rule comports with the rule's policy, which is to respect the jurisdiction of the court rendering the order and to encourage obedience of courts' orders.[26]

[16] We recognize an exception to the collateral bar rule may exist where a defendant's constitutional rights are at risk, e.g., where a defendant is charged with a crime based on an interlocutory order not yet appealable.[27] But we need not consider such circumstance here, because the temporary child support order at issue was followed by a final resolution of custody and support—the July 15, 2013, judgment—from which

---

[24] *State v. Lee*, 282 Neb. 652, 807 N.W.2d 96 (2011).

[25] 50 C.J.S. *Judgments* § 713 (2009). See, also, *State, ex rel. C., B. & Q. R. Co., v. N. Lincoln St. Ry. Co.*, 34 Neb. 634, 52 N.W. 369 (1892); Annot., 12 A.L.R. 1165 (1921); John R.B. Palmer, *Collateral Bar and Contempt: Challenging a Court Order After Disobeying It*, 88 Cornell L. Rev. 215 (2002).

[26] *Penny v. Alliance Trust Co.*, 259 F. 558 (8th Cir. 1919); Palmer, *supra* note 25; Doug Rendleman, *Toward Due Process in Injunction Procedure*, 1973 Ill. Law Forum 221. See, also, *Maness v. Meyers*, 419 U.S. 449, 95 S. Ct. 584, 42 L. Ed. 2d 574 (1975).

[27] See, *Maness v. Meyers, supra* note 26; Palmer, *supra* note 25.

Erpelding could have appealed the temporary child support order.[28] He did not.

Because Erpelding could have appealed the temporary child support order at the time of the July 15, 2013, judgment, he was precluded from collaterally attacking the temporary child support order at his criminal nonsupport trial. And he is precluded from collaterally attacking it now on appeal. Likewise, for these reasons, trial counsel was not ineffective for failing to collaterally attack the temporary child support order.

## 2. Jury Instructions

Erpelding makes two arguments with respect to the jury instructions. First, he argues that the district court violated the Sixth Amendment and the U.S. Supreme Court's decision in *Apprendi v. New Jersey*,[29] when it allegedly failed to provide for a jury determination of an essential element of the crime, i.e., whether Erpelding's nonsupport was "in violation of any order of any court." Second, Erpelding argues that the district court erred in, and his counsel was ineffective for, failing to require a jury instruction on the lesser-included offense of misdemeanor child support.

### (a) Sixth Amendment Claim

[17] Erpelding did not object at trial to the jury instructions he now assigns as error. Failure to object to a jury instruction after it has been submitted to counsel for review precludes raising an objection on appeal absent plain error indicative of

---

[28] See, *Jessen v. Jessen*, 259 Neb. 644, 611 N.W.2d 834 (2000); *Gainsforth v. Peterson*, 113 Neb. 1, 201 N.W. 645 (1924); *Dartmann v. Dartmann*, 14 Neb. App. 864, 717 N.W.2d 519 (2006). See, also, *Schropp Indus. v. Washington Cty. Atty.'s Ofc.*, 281 Neb. 152, 794 N.W.2d 685 (2011); *Hallie Mgmt. Co. v. Perry*, 272 Neb. 81, 718 N.W.2d 531 (2006).

[29] *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

a probable miscarriage of justice.[30] Erpelding does not argue that trial counsel was ineffective for failing to object to the jury instructions at trial.

[18] Plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process.[31]

We find no error in the jury instruction that is plainly evident, nor do we find prejudice that affected any substantial right of Erpelding.

A person commits criminal nonsupport when he or she "intentionally fails, refuses, or neglects to provide proper support which he or she knows or reasonably should know he or she is legally obliged to provide to a . . . minor child."[32] The crime is a felony if "it is in violation of any order of any court."[33]

The district court instructed the jury that Erpelding was guilty of felony nonsupport if the jury found that Erpelding "(1) . . . intentionally failed, refused, or neglected to provide proper support for his minor child" and "(2) . . . knew he was legally obliged to provide support to that child by an order of the District Court of Buffalo County, Nebraska, entered on August 20, 2012, in Case CI 12-291." The court also instructed the jury that it must find that the events occurred in Buffalo County during August, September, October, and November 2012.

[19,20] As a general rule, in giving instructions to the jury, it is proper for the court to describe the offense in the language

---

[30] *State v. Abdulkadir*, 286 Neb. 417, 837 N.W.2d 510 (2013); *State v. Watt*, 285 Neb. 647, 832 N.W.2d 459 (2013).

[31] *State v. Abram*, 284 Neb. 55, 815 N.W.2d 897 (2012); *State v. Williams*, 282 Neb. 182, 802 N.W.2d 421 (2011).

[32] § 28-706(1).

[33] § 28-706(7).

of the statute.[34] But the law does not require that a jury instruction track the exact language of the statute.[35] Thus, we do not find that the district court's failure to include the exact phrase "in violation of any order of any court," if error at all, is error which is plainly evident from the record.

Furthermore, no evidence suggests that the instructions given to the jury prejudicially affected a substantial right of Erpelding. In fact, Erpelding does not contest that he violated the temporary child support order. Instead, he takes the position that the order was "invalid" and that its validity should have been submitted to the jury. As we already explained, the validity of the order was not subject to attack.

We find that the jury instructions were not plain error and that there was no indication of a miscarriage of justice.

### (b) Lesser-Included Offense

Erpelding also argues that the district court erred for failing to require a jury instruction on a lesser-included offense of misdemeanor criminal nonsupport and that his counsel was ineffective for not requesting one. Erpelding's argument fails because it is premised on the incorrect assumption that the temporary child support order was subject to attack at his criminal nonsupport trial.

[21,22] A court must instruct a jury on a lesser-included offense if (1) the elements of the lesser offense are such that one cannot commit the greater offense without simultaneously committing the lesser offense and (2) the evidence produces a rational basis for acquitting the defendant of the greater

---

[34] *State v. Glantz*, 251 Neb. 947, 560 N.W.2d 783 (1997); *State v. Neujahr*, 248 Neb. 965, 540 N.W.2d 566 (1995); *State v. Friend*, 230 Neb. 765, 433 N.W.2d 512 (1988), *disapproved on other grounds, State v. Harney*, 237 Neb. 512, 466 N.W.2d 540 (1991).

[35] 89 C.J.S. *Trial* § 730 (2012). See, *State v. Loyuk, supra* note 3; *State v. Young*, 279 Neb. 602, 780 N.W.2d 28 (2010); *State v. Glantz, supra* note 34.

offense and convicting the defendant of the lesser offense.[36] Defense counsel is not ineffective for failing to raise an argument that has no merit or for failing to object to jury instructions that, when read together and taken as a whole, correctly state the law and are not misleading.[37]

Although felony nonsupport cannot be committed without simultaneously committing the lesser offense of misdemeanor nonsupport, no evidence was or could have been produced at Erpelding's criminal nonsupport trial that would provide a rational basis for acquitting him of felony nonsupport. The only difference between misdemeanor and felony nonsupport is that felony nonsupport is in violation of any order of any court. Erpelding's counsel did not and could not have challenged the validity of the underlying support order at his criminal nonsupport trial for the reasons discussed above.

We conclude that the court was not required to instruct the jury on the lesser-included offense, and Erpelding's counsel could not have been ineffective for failing to request the court to do so. Erpelding's argument is without merit.

### 3. Habitual Criminal Enhancement

Habitual criminal enhancement is governed by § 29-2221, which provides:

> (1) Whoever has been twice convicted of a crime, sentenced, and committed to prison . . . for terms of not less than one year each shall, upon conviction of a felony committed in this state, be deemed to be a habitual criminal and shall be punished by imprisonment . . . for a mandatory minimum term of ten years and a maximum term of not more than sixty years . . . .

---

[36] *State v. Alford*, 278 Neb. 818, 774 N.W.2d 394 (2009); *State v. Robinson*, 272 Neb. 582, 724 N.W.2d 35 (2006), *abrogated on other grounds, State v. Thorpe*, 280 Neb. 11, 783 N.W.2d 749 (2010); *State v. Weaver*, 267 Neb. 826, 677 N.W.2d 502 (2004).

[37] *State v. Young, supra* note 35.

. . . .

(2) . . . If the accused is convicted of a felony, before sentence is imposed a hearing shall be had before the court alone as to whether such person has been previously convicted of prior felonies. The court shall fix a time for the hearing and notice thereof shall be given to the accused *at least three days prior thereto*. At the hearing, if the court finds from the evidence submitted that the accused has been convicted two or more times of felonies and sentences imposed therefor by the courts of this or any other state or by the United States, the court shall sentence such person so convicted as a habitual criminal.

(Emphasis supplied.)

Erpelding argues that his sentences should not have been enhanced, because he did not receive notice of the enhancement hearing as required by § 29-2221. The State's position appears to be that it is not required to provide the defendant with a separate notice of the enhancement hearing, but, rather, that it is sufficient that "[Erpelding] have three days' notice supplied in a manner calculated to give him notice that there will be such a hearing."[38]

The State argues that because Erpelding was aware of the habitual criminal charge and because § 29-2221 requires that the enhancement hearing occur before sentencing, Erpelding should have known that the enhancement hearing would occur immediately before the sentencing hearing. Under the State's theory, notice of the sentencing hearing constitutes notice of the enhancement hearing, so long as the defendant is aware of his or her habitual criminal charge.

[23,24] It is a fundamental principle of statutory construction that penal statutes be strictly construed, and it is not for the courts to supply missing words or sentences to make clear

---

[38] Brief for appellee at 19.

that which is indefinite, or to supply that which is not there.[39] Section 29-2221 clearly requires 3 days' notice of the enhancement hearing and not merely notice of the sentencing hearing. The problem is that the statute does not specify the consequence of inadequate notice of the enhancement hearing.

[25,26] When interpreting a statute, a court's objective is to determine and give effect to the legislative intent of the enactment.[40] The purpose of the notice requirement in § 29-2221 is to ensure that the defendant has reasonable time to prepare a defense.[41] Thus, we conclude that the effect of inadequate notice of the enhancement hearing depends on whether the defendant was prejudiced by the lack of notice.

Even if Erpelding had received 3 days' notice of the enhancement hearing, the result would not be different. On appeal, Erpelding raises only one substantive issue with respect to the enhancement, and it is without merit.

Erpelding argues that his nonsupport conviction is not a felony as required for enhancement, because his failure to provide support was not "in violation of any order of any court." We already explained that Erpelding could not have attacked the validity of the temporary child support order at his nonsupport trial. Under the same reasoning, he could not have attacked the validity of the order at his criminal enhancement or sentencing hearing. Because this argument is without merit, we conclude that the lack of notice of the enhancement hearing was harmless and that no prejudice occurred.

We realize this result is essentially in line with the State's position that notice of the sentencing hearing constitutes notice of the enhancement hearing. But we cannot endorse the State's approach. It is our duty to uphold the law, and § 29-2221 requires notice of the enhancement hearing. The defendant

---

[39] *State v. Thacker*, 286 Neb. 16, 834 N.W.2d 597 (2013); *State v. McCarthy*, 284 Neb. 572, 822 N.W.2d 386 (2012).

[40] *State v. Dixon*, 282 Neb. 274, 802 N.W.2d 866 (2011).

[41] See *State v. Cole*, 192 Neb. 466, 222 N.W.2d 560 (1974).

should be given the notice that the statute requires. We determine that the State violated § 29-2221, but that such violation does not result in reversal under the facts of this case. We admonish the State to follow the 3-day notice requirement of § 29-2221.

## 4. Sentencing

Erpelding argues that his sentences are excessive and violate the Eighth Amendment to the U.S. Constitution and article I, § 9, of the Nebraska Constitution, both of which prohibit the infliction of cruel and unusual punishment. Erpelding complains that his concurrent sentences of 10 to 15 years' imprisonment are grossly disproportionate to his crime of nonsupport, i.e., his failure to pay 4 months of child support, totaling $900.

### (a) Eighth Amendment

[27] Erpelding is correct that the Eighth Amendment's proscription of cruel and unusual punishment prohibits not only barbaric punishments, but also sentences that are grossly disproportionate to the crime committed. But when weighing the punishment and the crime, Erpelding fails to place all relevant items on the scale.

[28] In weighing the gravity of his offense, we must place on the scale, not only Erpelding's crime of nonsupport, but also his history of felony recidivism. The U.S. Supreme Court, in *Ewing v. California*,[42] made clear that when a court is faced with a habitual criminal enhancement, its Eighth Amendment proportionality review must take into account the Legislature's goals in enacting such statute, i.e., to deter repeat offenders and to separate from society those who are "'incapable of conforming to the norms of society as established by its criminal law.'"[43]

---

[42] *Ewing v. California*, 538 U.S. 11, 123 S. Ct. 1179, 155 L. Ed. 2d 108 (2003).

[43] *Id.*, 538 U.S. at 29.

In *Ewing*, the defendant was convicted of felony grand theft for stealing three golf clubs after two other felony convictions. California's habitual criminal statute allowed Ewing to be sentenced to 25 years' to life imprisonment. The Court explained that the Constitution "'does not mandate adoption of any one penological theory,'" but that instead, "[a] sentence can have a variety of justifications . . . ."[44] In *Ewing*, the Court explained that the defendant's sentence was justified by the State's public safety interest in deterring repeat felons and was sufficiently supported by his criminal record, which involved numerous misdemeanor and felony offenses.

[29] With regard to whether the length of a sentence constitutes cruel and unusual punishment, the Nebraska Constitution does not require more than does the Eighth Amendment to the U.S. Constitution.[45] That is why we followed the reasoning of *Ewing* in *State v. Hurbenca*.[46]

In *Hurbenca*, the defendant's sentence for attempted escape was enhanced per § 29-2221, to 10 to 15 years' imprisonment, based on his prior felony convictions. He had previously been convicted of possession of a forged certificate of title, theft by receiving stolen property, attempting to procure a fraudulent title, and possession of a firearm by a felon. We concluded that the defendant's sentence was not grossly disproportionate and did not violate the Eighth Amendment's prohibition against cruel and unusual punishment.

In the present case, Erpelding was convicted of two prior felonies, aggravated assault with a deadly weapon and felon in possession of a deadly weapon. Those crimes form the basis for the habitual criminal enhancement on Erpelding's felony nonsupport conviction. Additionally, Erpelding's presentencing report shows he has been convicted of several

---

[44] *Id.*, 538 U.S. at 25.

[45] *State v. Mata*, 275 Neb. 1, 745 N.W.2d 229 (2008); *State v. Hurbenca*, 266 Neb. 853, 669 N.W.2d 668 (2003).

[46] *State v. Hurbenca, supra* note 45.

other crimes. In 2004, Erpelding was convicted of "Criminal Mischief, $500 to $1,500" and "Avoid[ing] Arrest." In 2005, he was convicted of "Deliver/Intent to Deliver Controlled Substances." In 2011, he was convicted of "Driving Under the Influence." In 2012, he was found to have "St[olen] Money o[r] Goods," and in 2014, he was convicted of "Attempted Unlawful Possession of a Deadly Weapon." He has also committed a number of traffic violations throughout the years, including six speeding incidents, four incidents of driving without a valid operator's license, and three incidents of driving under suspension.

Though we think 10 to 15 years' imprisonment may be the maximum end of the spectrum, it is not unconstitutional. It is justified by the State's public safety interest in deterring repeat felons and sufficiently supported by his criminal record.

### (b) Excessiveness

[30] Erpelding also claims his sentences are excessive. When reviewing a sentence within the statutory limits, whether for leniency or excessiveness, an appellate court reviews for an abuse of discretion.[47] When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the violence involved in the commission of the crime.[48]

We find no abuse of discretion on the part of the district court in imposing Erpelding's sentences. The Legislature made the intentional failure to pay child support a felony if it is "in violation of any order of any court."[49] Erpelding

---

[47] *State v. Parminter, supra* note 6.

[48] *State v. Huff*, 282 Neb. 78, 802 N.W.2d 77 (2011); *State v. Vasquez*, 271 Neb. 906, 716 N.W.2d 443 (2006).

[49] See § 28-706(7).

clearly had a court order directing him to pay support, and the jury found that Erpelding failed to pay that support. Under the law, Erpelding committed a felony. Because non-support was Erpelding's third felony, the prosecutor had the discretion to, and ultimately chose to, charge Erpelding with being a habitual criminal. When a defendant is charged with being a habitual criminal under § 29-2221, upon proof that the latest felony conviction is, at least, the defendant's third felony conviction, the statute *requires* the court to impose a mandatory minimum term of 10 years in prison. The maximum term is 60 years. Erpelding was sentenced to 10 to 15 years' imprisonment. Given Erpelding's criminal history already discussed, we conclude that the district court did not abuse its discretion in sentencing Erpelding to 10 to 15 years' imprisonment.

## VI. CONCLUSION

For the reasons set forth herein, the judgment of the district court is affirmed.

AFFIRMED.

MILLER-LERMAN, J., concurring.

I concur and write separately only to address the habitual criminal charge. By focusing on the triggering offenses of non-payment of child support, the imposition of a habitual criminal charge may seem out of line; however, in view of the purpose of the habitual criminal statute and Erpelding's long history of criminal conduct, I believe the decision to pursue the habitual criminal charge in this case makes more sense.

At the enhancement hearing, the evidence showed that Erpelding had been convicted of two prior felonies: aggravated assault with a deadly weapon, for which he received a 7½-year sentence, and felon in possession of a deadly weapon, for which he received an 18-month sentence. These felony convictions formed the basis for enhancement pursuant to Neb. Rev. Stat. § 29-2221 (Reissue 2008).

The record also showed that Erpelding had been convicted of numerous other crimes and violations as outlined in the majority opinion:

> In 2004, Erpelding was convicted of "Criminal Mischief, $500 to $1,500" and "Avoid[ing] Arrest." In 2005, he was convicted of "Deliver/Intent to Deliver Controlled Substances." In 2011, he was convicted of "Driving Under the Influence." In 2012, he was found to have "St[olen] Money o[r] Goods," and in 2014, he was convicted of "Attempted Unlawful Possession of a Deadly Weapon." He has also committed a number of traffic violations throughout the years, including six speeding incidents, four incidents of driving without a valid operator's license, and three incidents of driving under suspension.

Erpelding's crimes resulted variously in fines, probation, and 1-year sentences. Taken together, Erpelding's crimes occurred in the State of Arizona and in the following Nebraska counties: Buffalo, Nance, Kearney, Harlan, Dawson, Lancaster, Seward, and Gage. According to the presentence investigation, there were charges pending: in Buffalo County for assault in the third degree and in Jefferson County for manufacturing or delivery of methamphetamine, felon in possession of a deadly weapon, and habitual criminal. During the pendency of this case, an additional action in Buffalo County, in which Erpelding was charged with escape from custody and being a habitual criminal, was dismissed. At the time of the enhancement hearing, Erpelding was serving a sentence for a Seward County conviction for attempted unlawful possession of a deadly weapon.

Claims that the habitual criminal sentence is disproportionate to the offense are not uncommon. In fact, this court has rejected such a challenge. See *State v. Hurbenca*, 266 Neb. 853, 669 N.W.2d 668 (2003). In *Hurbenca*, we gave deference to the Legislature's choice of sanctions and cited the U.S. Supreme Court decision in *Ewing v. California*, 538 U.S.

11, 123 S. Ct. 1179, 155 L. Ed. 2d 108 (2003). In *Ewing*, the Court stated:

> [T]he State's interest is not merely punishing the offense of conviction, or the "triggering" offense: "[I]t is in addition the interest . . . in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law." . . . To give full effect to the State's choice of this legitimate penological goal, our proportionality review of [the defendant's] sentence must take that goal into account.
>
> [The defendant's] sentence is justified by the State's public-safety interest in incapacitating and deterring recidivist felons, and amply supported by [the defendant's] own long, serious criminal record.

538 U.S. at 29-30.

The "sentence-related" characteristics considered in the context of a proportionality analysis commonly include the length of prison term the defendant is likely to actually serve, the sentence-triggering conduct, and the defendant's criminal history. See *id.*, 538 U.S. at 37 (Breyer, J., dissenting; Stevens, Souter, and Ginsburg, JJ., join). See, also, *Rummel v. Estelle*, 445 U.S. 263, 100 S. Ct. 1133, 63 L. Ed. 2d 382 (1980). Focusing on the triggering crimes in this case does not initially seem to warrant enhancement to habitual criminal status, and the actual cost of incarceration to the public and to Erpelding initially may appear disproportionate. However, when viewed in the context demonstrated in the record, the prosecutorial decision to go forward with the habitual criminal charge in this particular case has a rational, if not particularly economical, basis.