IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. CANNON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

COLLEEN C. CANNON, APPELLANT.

Filed October 25, 2016.    No. A-15-1186.

Appeal from the District Court for Douglas County: W. RUSSELL BOWIE III, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, for appellant.

Douglas J. Peterson, Attorney General, and George R. Love for appellee.

INBODY, RIEDMANN, and BISHOP, Judges.

INBODY, Judge.

## INTRODUCTION

On May 12, 2014, Colleen C. Cannon was charged by information with one count of manslaughter and one count of use of a weapon (not a firearm) to commit a felony. The two charges related to the death of Darryel Fields. After a jury trial, Cannon was convicted and sentenced on both counts. Cannon then filed this timely appeal, assigning abuse of discretion with respect to the court's response to a jury's question during jury deliberation.

## STATEMENT OF FACTS

Cannon and Fields lived together for 15 years and had two children together. The relationship had issues of domestic violence and physical and verbal altercations as a consequence of alcohol consumption. On April 4, 2014, Cannon worked her normal shift of 4 p.m. to 12:30 a.m. at First National Bank of Omaha. Cannon left work at 12:45 a.m., purchased alcohol at a liquor

store, and arrived home at about 1:15 a.m. Upon her arrival at home, Cannon, Fields, and Kristy Carruth, who lived in the basement of Cannon and Fields' home, mixed alcoholic drinks, drove around for nearly an hour, and consumed alcohol into the early morning hours on April 5.

Cannon and Fields began to argue briefly at 4:30 a.m. because Fields was upset that Cannon returned home late from work, but the interaction calmed. At around 6:30 a.m., Carruth went to the basement to get some clothes together and to lay down. About 10 or 15 minutes later, Carruth heard a loud noise and she went upstairs. At that time, Fields and Cannon were physically fighting and striking each other. Fields grabbed Cannon by her throat and the back of her neck, pulling her towards the ground and causing it so she could not breathe or talk. Cannon testified that she got a knife from the kitchen counter to get Fields to let go of her throat. Throughout the altercation, Carruth attempted to intervene to get Fields and Cannon to stop, but she could not. Fields collapsed and Carruth saw blood from a chest wound. Cannon called 9-1-1, but was too upset to speak, causing Carruth to speak to dispatchers.

Fields died of a stab wound to the chest and Cannon had injuries to her neck as a result of the altercation. Carruth testified she did not observe Cannon stab Fields. Cannon testified she had no intent to kill Fields, but desired to get him off because she could not breathe or talk and she feared for her life.

At trial, the jury was instructed on both intentional and unintentional manslaughter. Specifically, Instruction 5 on intentional manslaughter states:

The material elements that the State must prove by evidence beyond a reasonable doubt in order to convict . . . Cannon of the crime of Intentional Manslaughter are:

1. That on or about April 5, 2014, the defendant did kill . . . Fields;
2. That the defendant did so in Douglas County, Nebraska;
3. That she did so intentionally, but without malice upon a sudden quarrel; and
4. That the defendant did not act in self-defense.

Additionally, Instruction 7 provided that: "'Malice' is defined as a condition of the mind which is manifested by the intentional doing of a wrongful act without just cause or excuse."

During deliberations, the jury sent the following question to the trial court: "To render a verdict of intentional manslaughter does Colleen have to have stabbed Darryel with the intent to kill him or just to have stabbed him on purpose" [sic]. The trial court held a hearing with counsel to consider the response to the question. The trial court stated, "[M]y suggestion would be to refer to the jury instructions, because it's right in there." The prosecutor agreed with the trial court's suggestion.

In response, Cannon's counsel stated:

[I]f [the jury has] read the jury instructions, which we assume they have, and can't glean that from the instructions, clear wording, then I think they need some help. And I think the answer to the question, which is a pretty clear one, is--I think the [c]ourt should respond: "To convict the defendant of voluntary manslaughter, the State must prove beyond a reasonable doubt that the defendant, when she stabbed the deceased, had the intent to kill him."

The trial court responded to Cannon's counsel, "I'm going to say--answer them: 'Please refer to the jury instructions,' because it's right in there in black and white. And you're probably right, they probably need some help, but I'm not going to give it to them" [sic]. Cannon's counsel then requested that the trial court refer the jury to the specific jury instruction regarding the need for an intent to kill in response to the jury's question. Cannon's counsel then referred back to Instruction 5 and told the trial court to review Instruction 5 and the definition of malice. In response, the trial court stated, "Intentional doing of a wrongful act without just cause or excuse." Cannon's counsel stated, "Without malice. So then you look at the instruction on malice and it says, to get convicted you have to intentionally kill someone without intent, because of the malice instruction. That's why I think you need to give a clarifying instruction."

The trial court then stated it was going to try referring to Instruction 5 first to see if the jury could "figure it out" and, if they could not, the trial court may do it the way Cannon's counsel requested. Cannon's counsel then stated his objection and again requested the court give instruction to the jury in the way he suggested. The trial court overruled Cannon's objection. The jury found Cannon guilty of both counts and she was subsequently sentenced. Cannon was sentenced to a period of 7 to 9 years' for intentional manslaughter with 62 days' credit for time served and 1 to 1 year for use of a deadly weapon to commit a felony, with the sentences to run consecutively.

## ASSIGNMENTS OF ERROR

Cannon asserts that the trial court abused its discretion and committed reversible error by failing to properly respond to the jury's question and refusing to instruct them that the intent to kill element must be proved by the State to sustain a conviction for voluntary or intentional manslaughter.

## STANDARD OF REVIEW

Whether to answer a question of law posed by a jury which has retired for deliberations is a matter entrusted to the discretion of the trial court, and in the absence of an abuse of that discretion, its action will not be disturbed on appeal. *In re Estate of Clinger*, 292 Neb. 237, 872 N.W.2d 37 (2015). Failure to object to a jury instruction after it has been submitted to counsel for review precludes raising an objection on appeal. *State v. Erpelding*, 292 Neb. 351, 874 N.W.2d 265 (2015).

## ANALYSIS

Cannon argues the trial court abused its discretion when it failed to provide an adequate response to the jury's question regarding intent and refusing to instruct them that the intent to kill must be proved by the State to sustain a conviction for voluntary or intentional manslaughter. Further, Cannon argues the jury instructions between the material elements instructions for intentional manslaughter and the definition of malice gave rise to the jury's question. Specifically, Cannon argues the jury instructions were confusing because "the jury is literally told that to convict on Intentional Manslaughter they must find that the defendant killed the deceased intentionally but without malice i.e. without intent." Brief for appellant at 14.

The trial judge is in the best position to sense whether the jury is able to proceed its deliberations and has considerable discretion in determining how to respond to communications indicating that the jury is experiencing confusion. *In re Estate of Clinger*, 292 Neb. 237, 872 N.W.2d 37 (2015). "When a point arising in a criminal trial has been covered in an instruction to the jury, it is not error to refer to such instruction as answering an inquiry submitted by the jury during their deliberations, in place of giving another instruction on the same point, although another instruction might properly have been given." *State v. Neujahr*, 248 Neb. 965, 974, 540 N.W.2d 566, 573 (1995), quoting *Savary v. State*, 62 Neb. 166, 87 N.W. 34 (1901).

If there is an applicable instruction in the Nebraska Jury Instructions, the court should usually give this instruction to the jury in a criminal case. *State v. Lavalleur*, 289 Neb. 102, 853 N.W.2d 203 (2014). As a general rule, in giving instructions to the jury, it is proper for the court to describe the offense in the language of the statute. *State v. Erpelding, supra*. The law does not require that a jury instruction track the exact language of the statute. *Id.*

In the instant case, the jury instructions provided that the State must prove beyond a reasonable doubt that Cannon killed Fields "intentionally, but without malice upon a sudden quarrel . . ." and subsequently provided the definition of malice. Such instructions are consistent with the Nebraska Jury Instructions, the language of the statutes, and relevant case law regarding intent, malice, and manslaughter. Neb. Rev. Stat. § 28-305(1) (Reissue 2008) provides that "[a] person commits manslaughter if he or she kills another without malice upon a sudden quarrel or causes the death of another unintentionally while in the commission of an unlawful act." Further, in reviewing the definition of malice, NJI2d Crim. 4.0 provides it is "intentionally doing a wrongful act without just cause or excuse."

The Nebraska Supreme Court has previously discussed intent with regard to manslaughter and the malice requirement. Specifically, the Nebraska Supreme Court has determined that "an *intentional* killing committed *without malice* upon a 'sudden quarrel,' as that term is defined by our jurisprudence, constitutes the offense of manslaughter." *State v. Smith*, 282 Neb. 720, 734, 806 N.W.2d 383, 394 (2011) (emphasis added). "[W]ith respect to sudden quarrel manslaughter, the distinguishing factor is that the killing, even if intentional, was the result of a legally recognized provocation, i.e., the sudden quarrel[.]" *Id.* at 732, 806 N.W.2d at 393. "It is nonsensical to regard 'sudden quarrel' as a provocation . . . but then conclude that lethal response to the provocation must be unintentional in order to constitute voluntary manslaughter." *Id.* at 734, 806 N.W.2d at 394.

Cannon argues that there is an inherent conflict in the jury's elements instruction and the definition of malice. As discussed above, malice was defined as "a condition of the mind which is manifested by the intentional doing of a wrongful act without just cause or excuse." With that in mind, when the intentional manslaughter instruction said "that Cannon did so intentionally, but *without malice* upon a sudden quarrel," it is saying this intentional act *did* have an excuse--that being sudden quarrel provocation. The instructions were consistent with the offense of manslaughter, as they provided the jury sufficient instruction to determine whether Cannon committed an intentional killing without malice upon a sudden quarrel. Therefore, there is no inherent conflict between the elements instruction and the definition of malice argued by Cannon.

- 4 -

Here, when presented with a question by the jury, the trial court referred the jury to the instructions which were pertinent to its question. Specifically, the trial court referred the jury back to Instruction 5, on intentional manslaughter, and told the jury to review Instruction 5 and the definition of malice. The trial court felt the answer to the jury's question was "right there" in the jury instructions and believed them to be "black and white." Although the trial court acknowledged that the jury "probably need[ed] some help," it was not an error for the trial court to refer to the instruction to answer the inquiry by the jury during deliberations. The trial judge appropriately exercised his discretion to respond to the jury by referencing the jury instructions directly, particularly as the instructions were consistent with the Nebraska Jury Instructions, the statute language, and case law, as discussed above. Although the language of the jury instructions by the district court in this case may not have been in the exact language of the statute, this is not required.

Further, we acknowledge that Cannon did not object at trial to the original jury instructions. Since Cannon failed to object to the original jury instructions, she has waived the right to object to them on appeal. See S*tate v. Erpelding*, 292 Neb. 351, 874 N.W.2d 265 (2015).

Finally, we note that because the question raised by the jury was adequately covered by the instructions given, the trial court did not abuse its discretion by referring the jury back to the instructions.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.